PITTSBURG LUMBER COMPANY *et al. v.* B. FRANK SHELL.

(*Knoxville.* September Term, 1916.)

1. REFORMATION OF INSTRUMENTS.   Deed.   Description.
    Mistake.

A lumber company owning land on both sides of a mountain which
   had it surveyed so as to show the part of the land on the south
   side, which survey, by reason of a mistake in the name of a
   ridge, one of the natural boundaries of the land, included
   fifty acres between the ·main ridge and a spur ridge, and which
   intended, as did the purchaser, that its deed should follow
   the survey, and the description in whose deed corresponded
   with the survey, made no ·mistake in drafting the deed to in-
   clude the land in dispute, but conveyed exactly what it in-
   tended to convey, and hence was not entitled to a reformation
   of the deed on the ground of mistake.   (*Post, pp.* 470-476.)

Case cited and approved:   Baker v. Harlan, 71 Tenn., 505;   Gra-
   ham v. Guinn, 43 S. W., 749;   Armstrong v. Short, 95 Ind., 326.

Cases cited and distinguished:   Webster v. Stark, 78 Tenn., 406;
   Water Power Co. v. Merriman, 35 Minn., 42;   Wise v. Brooks,
   69 Miss., 891.

2. REFORMATION OF INSTRUMENTS.   Grounds.   Mistake.

To be the subject of correction a mistake in an instrument must
   have been mutual, or there must have been a mistake of one
   party influenced by fraud of the other.   (*Post, pp.* 470-476.)

3. REFORMATION OF INSTRUMENTS.   Mistake.   Mutuality.

A grantor in order to obtain a reformation of his deed must show
   that he made a mistake, and cannot obtain relief upon a mere
   showing that the grantee labored upon a misapprehension or
   of the grantee's fraud.   (*Post, pp.* 470-476.)

4. DEEDS.   Construction.   Intention of grantor.

The purpose of the parties at the time a deed was made will de-
   termine its effect, for the primary rule of the construction of
   contracts is to carry out the intention of the parties thereto.
   (*Post, pp.* 476, 477.)

Pittsburg Lumber Co. v. Shell.

**5. APPEAL AND ERROR.** Admission of evidence. Objection. Estoppel.

Complainant in a bill for the reformation of a deed whose case as a matter of fact rested on extrinsic evidence, could not insist on the defendant's appeal that the court should not look to parol proof to determine the controversy. (*Post, p.* 477.)

FROM CARTER.

Appeal from the Chancery Court of Carter County to the Court of Civil Appeals, and by *certiorari* to the Court of Civil Appeals from the Supreme Court. —Mr. Shoun, Special Chancellor.

Lee F. Miller, for plaintiffs.

Allen & Clark, for defendant.

Mr. Justice Green delivered the opinion of the Court.

The bill in this case was filed for the reformation of a deed executed by the Pittsburg Lumber Company to Shell. It was averred that, by mistake, fifty acres were included within the calls of this deed, which land complainant did not intend to convey, nor the defendant to purchase. Incidental relief is sought, which need not be noticed. An answer filed by Shell put in issue the material averments of the bill. Much proof was taken, and there was a decree for the complainant below, which was affirmed by the court of civil appeals. Shell filed a petition for *certiorari,* which has been granted and the case heard here.

In 1913, the complainant lumber company purchased from the Union Tanning Company a tract of land in Carter county, containing about three thousand seven hundred acres. White Rock Mountain runs through this land from east to west. The northern slope of White Rock Mountain is drained by Laurel Fork creek; the southern slope is drained by Doe river. Some interests allied with complainant company were constructing a railroad up the Laurel Fork valley, and the timber on the Laurel Fork side of White Rock Mountain was therefore accessible to the complainant. The timber on the Doe river side of the mountain was not so available, and complainant company undertook to sell its holdings on the southern, or Doe river, side of White Rock Mountain.

In order to determine the lay of its land, the complainant company had a survey of the northern portion made. The lumber company wished to ascertain how much of its timber was on the Laurel Fork watershed.

One of complainant's agents began negotiations with defendant Shell for the sale of the southern slope of White Rock Mountain, and Shell finally agreed to purchase this part of complainant company's lands for $13,000.

Prior to the culmination of Shell's negotiations with complainant company, he was furnished with a plat of the lands, made by complainant's surveyor from the aforesaid survey. The deed given to Shell was based on the aforesaid survey and correctly de-

scribed the land shown, by the plat, to be on the southern slope of White Rock Mountain.

The alleged mistake sought to be corrected arose in this way: White Rock Mountain runs through this land several miles from east to west, as said above. Near the eastern extremity of White Rock Mountain a ridge goes off from it in a northeastwardly direction, of about the same height as the remainder of White Rock Mountain. White Rock Mountain continues east for a half mile or so, after the ridge leaves it, to a gap separating White Rock from Buck Mountain. There is a controversy in the record as to which is the main ridge of White Rock Mountain; the one that runs off northeastwardly, or the ridge that goes on to Buck Mountain. Both the lower courts, however, have found that the latter ridge is White Rock Mountain, and that the former ridge, running off as aforesaid, is a mere spur, generally known as Sheep Rock Ridge.

The surveyor of the complainant, who made the plat above referred to, mistook Sheep Rock Ridge for the main ridge of White Rock Mountain. He therefore showed, as south of White Rock Mountain, on his plat, about fifty acres, really located in the angle east of the intersection of the two ridges, and north of White Rock Mountain. The calls of the deed following the plat included the fifty acres. The proof shows that it is difficult to tell which is the main ridge of the mountain at this point. As a matter of fact, however, the drainage from the southern slope

of Sheep Rock Ridge goes into Laurel Fork creek and not into Doe river.

It is not established that Shell knew there was an error in the plat furnished him; indeed he still insists that Sheep Rock Ridge is the main ridge of White Rock Mountain.

It may therefore be said that at the time the plat was furnished Shell and the deed to him was made, all the parties thought Sheep Rock Ridge was the main ridge of White Rock Mountain, and all of them thought that the land on the southern slope of Sheep Rock Ridge drained into Doe river. It may be further conceded that it was the intention of the complainant to sell only such land as drained into Doe river and only such land as lay between the apex of White Rock Mountain and Doe river, and that Shell only intended to buy such land. Having found such to be the facts, the lower courts thought a case for reformation was presented.

We do not think the conclusion reached was correct.

There was no mistake in drafting the deed, so as to include the fifty acres in dispute. This fifty-acre tract was shown as south of White Rock Mountain on the map furnished Shell, and the description in the deed to him followed the plat. The complainant's surveyor thought this fifty acres was on the southern slope of White Rock Mountain, and complainant accepted and relied on his survey. So that complainant company conveyed just exactly what it intended to convey.

Pittsburg Lumber Co. v. Shell.

The mistake was not in the identity of the land conveyed, but was in the name of one of the natural boundaries of the land and with reference to the slope and drainage of the land. The complainant intended its deed to follow the plat, and so did the defendant. The description in the deed corresponded with the plat exactly.

The land conveyed in the deed is described in these words:

"All that portion of a tract, or parcel, of land situated on the southern slope of White Rock Mountain and being located between the apex of said mountain and the town of Roane Mountain, Carter county, Tenn., and being the southern portion of the Union Tanning Company tract, draining into Doe river and its tributaries; and the said parcel of land is more particularly described as follows: Begining at the top of White Rock Mountain on a stake on Clark and Klock's line with chestnut pointers. [Then follow numerous calls including the tract.] The courses and distances preceding are intended to connect the points on top of the mountain at its eastern and western extremities, and notwithstanding these courses and distances the lines should follow the apex of the mountain as it runs."

The complainant lays much stress on the concluding clause in the foregoing description, to the effect that the courses and distances, are intended to connect the points on top of the mountain, and that notwith-

standing such courses and distances the line should follow the apex of the mountain as it runs.

It is urged that this language shows the courses and distances named were intended to yield to the line indicated by the apex of the mountain as it runs. Let this be granted, the mountain intended, however, included Sheep Rock Ridge. The eastern extremity intended was on Sheep Rock Ridge. This is demonstrated by the fact that the begining corner is a stake on Clark & Klock's line. Clark & Klock's line does not touch what is herein proved to be the main ridge of White Rock Mountain.

To be the subject of correction, a mistake must have been mutual, or there must have been a mistake of one party influenced by fraud of the other. *Baker v. Harlan,* 71 Tenn. (3 Lea), 505; *Graham v. Guinn* (Ch. App.), 43 S. W., 749.

In order to obtain relief herein, the complainant must show that it made a mistake. It cannot obtain a decree upon a mere showing that Shell labored under a misapprehension, nor, in a case like this, upon showing that Shell was guilty of fraud. A careful consideration of the record before us leads to the conclusion that the complainant made no mistake whatever in the execution of this deed, according to the information possessed at that time.

Reformation of a written instrument will not be decreed where the instrument accords with the purpose of the parties at the time of its execution. The parties may deprecate such a contract, but they are

not entitled to reform it. They are not entitled to such relief merely because their intentions were influenced by mistaken considerations. The question always is, What did the parties intend at the time they contracted? not what they would have done if they had been better informed.

The foregoing statement of the law is fully sustained by authorities, both in this jurisdiction and others. As a matter of fact, we think the case before us is really controlled by *Webster* v. *Stark,* 78 Tenn. (10 Lea), 406.

In this case the defendant had certain land at Greenbrier, Tenn., laid off into town lots. Lots numbered 17, 19, and 21 were adjacent. A mill was located principally on lot 19, partially on lot 17. The complainant intended to buy the land on which the mill was located and a lot adjoining. The deed to complainant, however, called for lots 21 and 19. He filed a bill for reformation, which was dismissed. The court said:

''The whole difficulty has been occasioned by the fact that the mill, instead of being on one lot alone, was partly on two lots, 17 and 19. No doubt the complainant intended to buy the land on which the mill was situated, and he did buy the lot on which he, and probably the defendant, supposed it was entirely located, and on which it was principally located. If, under this mistake, he selected lot 21 as the adjoining lot and contracted for it, we see no way in which we can correct the mistake by giving him the other

lot in lieu.  The mistake was not in the contract, or in the writing embodying the contract, but of an extrinsic fact, which fact, if known, would probably have induced the parties to make a different contract. The mistake, such as it was, was the mistake of the complainant, and there is noting to fix the defendant with any fault in the premises.  The written instrument drawn up by him embodies the contract of the parties exactly as it was entered into.  There is no ground for interfering with it in any way.'' *Webster* v. *Stark*, supra.

In the case at bar the mistake was merely one of extrinsic fact.  There was a mistake as to the slope and drainage of the land sold.  Likewise, there was a mistake as to the identity, or name, of Sheep Rock Ridge, bounding the land sold on the north.

In a Minnesota case a deed of water power called for fifty cubic feet of water per second.  The intention of the parties was to convey sufficient water power to run a mill of a particular type.  It was supposed from previous experience that fifty cubic feet of water per second would be sufficient.  Later, however, it was found that one hundred and forty-six cubic feet of water per second was necessary to operate the mill and there was a suit for reformation, which was dismissed.  The court said:

''The proposition which lies at the foundation of all suits to reform is that the court cannot make such a contract as it thinks the parties ought to have made, or would have made if better informed, but merely

makes it what the parties intended it should be." *St. Anthony Falls Water Power Co.* v. *Merriman,* 35 Minn., 42, 27 N. W., 199.

In a case from Indiana, tenants in common undertook to divide equally a certain tract of land and they executed deeds between themselves. The deed of one of them excepted from the conveyance two and two thirds acres off the east side of the tract. In order to have divided the lands equally, as intended, the exception should have been one and twenty hundredths acres off the east side. There was a suit for reformation, which was likewise dismissed. The court said:

"There was no such mistake in either of their partition deeds, as either of the parties, . . . could have obtained relief against, in a court of equity. It appeared from the evidence of each of the said parties that each of them could read and write, and that their partition deeds were read to them before they executed the deeds. It is very clear from their testimony, we think, that they did not mistake the contents of the deeds, but only the effect of such contents; and that the misdescription of the lands intended to be conveyed, in each of said deeds, was the result, not of the mistake of the parties, but of their carelessness in not procuring, as they might have done, correct descriptions of the lands before they executed their deeds." *Toops* v. *Snyder et al.,* 70 Ind., 554.

To the same effect see *Armstrong* v. *Short,* 95 Ind., 326.

In a Mississippi case there was a large tract of land involved, about one hundred acres of which lay north of Piney creek. Seventy acres of this land north of Piney creek were conveyed by metes and bounds to one Rowe. The owner then conveyed the remainder of the tract and there were subsequent conveyances thereof, excepting one hundred acres north of Piney creek, supposed to have been deeded to Rowe. The heirs of the grantor claimed thirty acres north of Piney creek not included in Rowe's deed. The last purchaser of the large tract sought to have his deed, and previous deeds, reformed so as to except only seventy acres north of Piney creek, on the theory that the intention of all parties had been to exclude only such of the land as Rowe had taken under his deed. Relief was denied, and the court said:

"It is doubtless true that, but for misapprehension as to the extent of the operation of the deed to Rowe, the parties would have proceeded differently; but that is not the question for equity to consider in a proceeding to reform contracts. It is not what the parties would have intended if they had known better, but what did they intend at the time, informed as they were." *Wise* v. *Brooks,* 69 Miss., 891, 13 South., 836.

An elaborate supplemental brief is filed by the learned counsel for the complainant, in which it is insisted that the bill herein should be treated as one for construction of the deed in question, rather than

reformation of such deed. This suggestion was made in the case for the first time in this court.

It is immaterial, however, whether we regard the suit as one for construction or for reformation. In either case, the purpose of the parties at the time the deed was made would determine the effect of the instrument, for the primary rule of construction of contracts is to carry out the intention of the parties thereto.

The suggestion that parol evidence is not admissible in construing deeds cannot be accepted in this case. The rule relied on has well-known exceptions. The case of the complainant, as a matter of fact, rested on extrinsic testimony, and it cannot insist, at this time, that the court should not look to the proof to determine the equity of this controversy.

It results, from the authorities and our conclusions, heretofore expressed, that the decree of the chancellor must be reversed and the bill dismissed.