KING LUMBER CO., Inc., v. NATIONAL BANK OF SUMMERS, OF HINTON.

(Circuit Court of Appeals, Fourth Circuit. February 21, 1923.)

No. 1991.

Contracts ☞9(1)—Held no meeting of minds of parties to alleged building contract.

Where the only description of the building in an alleged building contract was by reference to plans and specifications drawn by a named architect and identified by the signatures of the parties, but the architect never prepared plans and specifications which were signed or accepted by the parties, *held*, there was no meeting of the minds, and hence no valid contract.

In Error to the District Court of the United States for the Southern District of West Virginia, at Charleston; George W. McClintic, Judge.

Action by the King Lumber Company, Inc., against the National Bank of Summers, of Hinton. Judgment for defendant, and plaintiff brings error. Affirmed.

R. C. Walker, of Charlottesville, Va., and Staige Davis, of Charleston, W. Va. (Walker & Walker, of Charlottesville, Va., and Dice & Davis, of Charleston, W. Va., on the brief), for plaintiff in error.

William G. Mathews, of Charleston, W. Va. (Thomas N. Read, of Hinton, W. Va., on the brief), for defendant in error.

Before KNAPP, WOODS, and WADDILL, Circuit Judges.

WOODS, Circuit Judge. The question to be decided in this action for breach of contract is whether the District Judge was right in directing a verdict for the defendant on the ground that the transaction between plaintiff and defendant did not constitute a contract. Plaintiff and defendant signed on August 11, 1920, a paper, in the standard form of a builder's contract, purporting to be an agreement for the construction of a bank building by plaintiff for defendant. There was no description of the building, except that contained in the following clause and the letter to which it refers:

"Article 1. The contractor shall and will provide all the materials and perform all the work for the general contractor work as shown on drawings and specifications, which calls for a building, including basement, first floor mezzanine, and second floor, and as modified by letter No. 1 attached to this contract, should the owner decide to omit the entire basement, except boiler and fuel room, deduct from the contract price the sum of ($12,500.00). We have allowed in our estimate the sum of $12,000.00 for banking room counters and finish, and $1,500.00 for movable furniture; should this work cost more than we allowed, the owner is to reimburse the contractor for additional cost, as shown on the drawings and described in the specifications prepared by Mr. Richard M. Bates, Jr., architect, which drawings and specifications are identified by the signatures of the parties hereto and become hereby a part of this contract."

Letter No. 1, referred to, was:

"It is further agreed between the contractors and owners that the plans and specifications as prepared by Richard M. Bates, Jr., architect, will in-

corporate the changes as outlined by the preliminary sketches presented to be in accordance with said preliminary sketches, omitting columns in the banking room, and using the I-beams of sufficient strength to support all floors above banking room, and having an exterior stairway to basement, and having metal window sash instead of wood, and footings to be carried down of sufficient depth to obtain firm foundation; all floors on second floor to be finished concrete floors, with six-inch base."

No drawings and specifications identified by signatures of the parties were ever in existence, and it appears from the testimony that none had at the time been agreed upon. Evidently, therefore, at this time there was no contract capable of execution. The parties had before them, however, plans for a three-story brick building prepared by the architect, Bates, and sketches of a bank building submitted by a New York architect. According to the letter No. 1, made a part of the paper, Bates was to change his plans so as to incorporate in them the features of the sketches referred to, with the omissions mentioned. A month after the paper was signed, on September 10, the parties met, and Bates submitted the plans drawn according to his instructions as he understood them. The building committee of the bank was satisfied with the plans, but King, representative of plaintiff, objected to them on the ground that they did not embody the original Bates plans changed to conform to the sketches. The changes then suggested by King were agreed to and noted by Bates on the plans. King took the plans, with changes proposed by him noted on them, for further examination. Within a few days Bates prepared new plans and specifications, which he testified embodied all the changes requested by King at the meeting of September 10. These plans were sent to the plaintiff and rejected by it, as not in conformity to the agreement. Bates afterwards wrote more than once to plaintiff, insisting that it proceed with the work in accordance with the plans, and saying he could not agree to further changes without consent of the bank's representatives. But afterwards, in the latter part of September, Bates agreed to some additional changes demanded by plaintiff, subject to the approval of the building committee. Before these proposed changes could be submitted to the committee, they became impatient at the delay, and wrote to plaintiff that, having lost hope of its doing the work, they had given the contract to another.

Taking the view of the testimony most favorable to the plaintiff, we are unable to find that the minds of the parties ever met in agreement on the plans and specifications for the building. The paper signed on August 11, 1920, described the work to be done "as shown on the drawings and described in the specifications prepared by Mr. Richard M. Bates, Jr., architect, which drawings and specifications are identified by the signatures of the parties hereto, and become hereby a part of this contract." These drawings and specifications were made by Bates and accepted and insisted on by the defendant, but were not accepted by the plaintiff, and the changes required by plaintiff were never accepted by the defendant. No agreement as to changes by the architect was binding on the defendant until approved. Therefore the minds of the parties had not met on the plans and specifications necessary to complete the contract on September 28, when defendant by

letter ended the negotiations and refused to deal further with the plaintiff.

True, the provision of the signed paper that the plans and specifications should be drawn by Bates and identified by signatures of the parties might have been waived by either party. But not in the paper, nor in the correspondence, nor in the conversations are we able to find plans and specifications or any definite description of the building agreed on by the parties.

It is not necessary for us to decide whether the failure to make the contract in contemplation was due to the cavil or procrastination of the plaintiff, or the undue impatience of the defendant in breaking off the negotiations when the architect and the plaintiff had about settled the differences between them. The conclusion is inevitable that the action for breach of contract must fail for lack of proof that the contract was made.

· Affirmed.

KNAPP, Circuit Judge, who took part in the hearing of this case, died before the opinion was announced.