## WILLIAM B. LIND AND ANOTHER v. JAMES S. RUSSELL AND OTHERS.[1]

January 2, 1925.

No. 24,223.

**Specific performance denied because no contract was made.**

> The correspondence examined and *held* not to show a completed contract for the purchase of land, hence the action for specific performance must fail.

Action in the district court for Washington county for specific performance of contract. The case was tried before Searles, J., who ordered that the action be dismissed. From an order denying their motion for a new trial, plaintiffs appealed. Affirmed.

*Francis B. Hart,* for appellants.

*Wilson, Thoreen & Lindbloom,* for respondents.

HOLT, J.

Action for specific performance, decision for defendants, and appeal by plaintiffs from the order refusing to amend the findings and denying a new trial.

In the early days of the state one Russell owned a government lot on St. Croix river which was platted as a townsite, but no town arose thereon. Russell died, leaving three young children, who were taken by relatives to a distant state. They are now elderly people, one in California and two in Michigan. No taxes were paid, and the Russell heirs either did not know that their father died the owner of this land or else deemed it not of sufficient value to keep up taxes and care for it. In some recent litigation one Leadstrom, owning land near by, became interested in the Russell government lot, and his attorney, Mr. F. B. Hart, ascertained the whereabouts of the heirs, and by correspondence began negotiations for its purchase. The negotiations are entirely by correspondence up to the time the heirs conveyed to defendant Wilson, an attorney at Still-

[1]Reported in 201 N. W. 547.

water. Unless the letters constitute a consummated agreement, the finding that none was ever made cannot be disturbed, for, as to the verbal negotiations at some meetings in Stillwater, wherein there is some conflict, it was solely for the court below to determine the truth.

The first part of the correspondence need not be set out; suffice it to say that Leadstrom had offered $75 for a quitclaim deed. Under date of March 19, 1923, Mr. Hart wrote Mr. George, the attorney who represented the heirs: "The deed which was forwarded to you to be executed by the Russell heirs to Mr. Leadstrom has not been received. The suit which Mr. Leadstrom had to settle the boundary has been decided adversely to him. He withdraws entirely his proposition to purchase any interest the Russell heirs may have. There is another party interested in the property and in conference with him, he stated * * * that he would pay a reasonable price for a quitclaim deed from the Russell heirs, but he did not think it worth $75 * * * if you will take the deed which you have in your possession to some stenographer and have the name of J. W. Walrath inserted therein wherever the name of Albert Leadstrom now appears, have it executed at once and forwarded to the Minnesota Loan & Trust Company of this city for delivery to me upon the payment of the consideration, I will endeavor to secure as much as possible from Mr. Walrath, and I think I can persuade him if the deed is in hand to pay the $75. I think I will say further that if the deed comes at once I will personally be responsible for that amount, but there must be no further delay." In answer Mr. George, on April 3, wrote that he had forwarded to the heirs another deed for execution "in blank with authorization to insert the name of any person who may care to purchase this property and pay $75.00." The next day a note from Mr. Hart to Mr. George was dispatched, ending thus: "If the deal is off, please advise me." So far there can be no claim of a closed contract.

When the new deed for a new deal was executed it was not sent to the Minnesota Loan & Trust Company, nor was the grantee left blank nor did it run to J. W. Walrath. On the contrary, Frank T. Wilson, a member of the law firm of Wilson, Thoreen &

Lindbloom, in Stillwater, was made grantee and the deed forwarded to that firm with a letter of special instructions from Mr. George, dated April 21, on which day a letter was also sent Mr. Hart advising him to communicate with the attorneys at Stillwater, saying: "They will deliver the deed upon payment of the money. It seems to me under all the circumstances $75.00 is not enough for this property, but I am willing to abide the decision of Wilson, Thoreen & Lindbloom." The special instructions accompanying the deed state that Mr. Hart had withdrawn Leadstrom's offer to buy, but had "another party who will give $75.00 or thereabouts for a quitclaim deed of the Russell heirs. We would really prefer to quitclaim our interest to some of the actual occupants of the land who have paid taxes and spent money on it but of course we will sell to Mr. Hart if he will give us $75.00. I am writing to him that I have forwarded the deed to you and that you will handle the matter for us. If you cannot make a deal with other parties for more than $75.00 you are authorized to close with him for that amount. I have inserted the name of Mr. Frank T. Wilson of your firm in this quitclaim deed as grantee, deeming it better to handle the matter that way."

Under the instructions Wilson, Thoreen & Lindbloom sought and obtained from an occupant of the land $100 for a quitclaim deed. It is quite clear to us that from the correspondence recited neither Mr. Lind nor Mr. Hart can claim a consummated contract of purchase. The letter of April 21 to Mr. Hart left further negotiations to the judgment of the Stillwater attorneys who carried out the instructions given them and sold to an occupant. Arriving at that conclusion, it is not necessary to consider the claim of want of written authority from the heirs to Mr. George to make a sale, or whether such written authority could properly be proven by the admission of two of them to Mr. Hart subsequent to the commencement of the action and after the land had been sold to another party. It also follows that error, if any, in the reception of evidence as to conversations between Mr. Hart and the attorneys at Stillwater cannot affect the result.

The order is affirmed.