WELLS CONSTRUCTION COMPANY v. GODER INCINERATOR COMPANY.[1]

December 23, 1927.

No. 26,351.

**Conduct of parties conclusively negatived existence of a contract between them.**

The issue whether a contract was made orally resolved against plaintiff because, even though there had been some agreement and whatever it was, the subsequent unequivocal conduct of both parties shows conclusively that substantial and necessary terms (including the price of the building to be erected) had not been agreed upon, finally or at all.

Contracts, 13 C. J. p. 290 n. 10, 11; p. 776 n. 96.

Defendant appealed from an order of the district court for Hennepin county, Montgomery, J. denying its alternative motion for judgment or a new trial. Reversed with directions.

*A. X. Schall, Jr.* for appellant.

*John D. Nunan* and *Kelly, Bauers & Carlson,* for respondent.

[1]Reported in 217 N. W. 112.

Stone, J.

Action for breach of contract. After an adverse verdict for $10,500, defendant appeals from an order denying its alternative motion for judgment or a new trial.

Both plaintiff and defendant are corporations, plaintiff being the successor of the partnership between which and defendant the alleged contract was made. For convenience we shall refer to the agreement as having been made by plaintiff itself. The agreement was never reduced to writing. Holding as we do that no contract was proved, it is expedient to go into the evidence somewhat in detail. The story is not short.

Plaintiff's claim is that an agreement was reached whereby, if defendant was awarded the general contract for the construction of an incinerator plant for the city of Minneapolis, plaintiff was to be sublet the main building for $65,000. Defendant did secure the general contract but sublet the building job to a contractor other than plaintiff. So if there was a contract, it was breached. The conversation which is claimed to have resulted in the contract took place between a Mr. Wells, representing plaintiff, and a Mr. Kloepfel, representing defendant. The two met in Minneapolis, Kloepfel coming from Chicago for that purpose on November 24, 1924. · The situation seems to have been much canvassed, not omitting some of its political aspects. According to Mr. Wells, an agreement was reached as follows:

"I said, 'Before we go any further we should have some understanding' * * * And he [Kloepfel] said the incinerators they had built, * * * run about * * * $775 a ton, and this was a 210 ton plant and would run 165,000; and that on the basis of their experience they would find about 65,000 of that would be on the building, * * *. He gave me approximately the size of the building and asked me to cube the building. * * * He told me the building was a rough building on the order of a warehouse * * * or garage, and it would be fireproof. And after I figured it up I said, 'Yes, we could build a building of that size for $65,000.' And he asked me if we cared to go into it on that basis, and I said,

'Yes, we would.' They would take the building, or bid the job in entirely, * * * and let us build the building at 65,000, * * *. He said if they were awarded the contract we would get the building at $65,000."

There is evidence that neither the stack nor the plumbing was considered part of the building. But at the time of this conversation, plans and specifications had not been examined and were not even available. Neither of the parties knew, beyond the vague generality indicated by the conversation, just what the building was to be in detail. Notwithstanding it was competent for the parties to agree that, whatever the building required finally by the city, the plaintiff should have and would take the contract for its erection at $65,000. There can be no question of consideration, for if there was a contract the mutual promises were abundant consideration, each for the other. The question is simply whether the transaction ever passed the stage of negotiation and ripened into a contract. It should be observed in passing that for defendant the making of a contract, or anything approaching a contract, is unequivocally denied.

We go now to the unquestioned circumstances which show no contract. Plaintiff was a building contractor which did not handle incinerator equipment. The interview between Messrs. Wells and Kloepfel followed a short correspondence in which plaintiff had indicated its desire to furnish a "bid" on the building. *After* the conversation and between November 24, 1924, and April 11, 1925, there was considerable correspondence, none of which is very significant. There is nothing in it to show that a contract had been arrived at. On that point it is simply negative. On April 11 a letter was written by defendant to plaintiff which is significant in that it was accompanied by specifications for excavation, brick and concrete work, together with blueprints, and asked for a lump sum bid "on excavation, brick work and concrete work and a separate estimate on roofing." It continued thus: "We also will mail specifications for steel sash, doors, structural steel work, miscellaneous iron work, stairs, etc. within a few days. If you should care to

bid on this material, please let us hear from you to that effect. Your early estimate will be highly appreciated."

The next letter is another from defendant to plaintiff under date of May 28, 1925, in which it requested "your bid on the entire building, exclusive of painting," not later than June 3. With another letter, June 9, defendant sent plaintiff more blueprints and specifications and requested plaintiff's "bid" not later than June 18. Defendant's letter of May 28 was answered by plaintiff May 29, 1925, over the signature of Mr. Wells, with whom the alleged contract of November 24, 1924, had been made, if at all. He acknowledged the receipt of defendant's letter and said:

"Note that you request bid not later than June 3rd. Not considering other matters it would be impossible to arrive at a definite cost until a number of questions regarding the work are settled. * * *

"You no doubt recall my understanding and agreement with you on your first trip to Minneapolis and which has been discussed many times since. *At that time it was understood that we were to make a detailed estimate of the cost and we would come to an agreement on the price.* As the greater part of the work is concrete and brick, the quantities of same can easily be determined. The balance of the sub bids you no doubt have or can easily obtain. *There should be no reason why we should be very far apart on a fair cost.*

"I never at any time agreed to handle the work on a basis of some competitor's figure but have always maintained that *you would not have to pay anything but a reasonable amount for the building.* I gave Mr. Goder the approximate cost of the building, depending of course on the items in question." (Italics ours.)

Complying with defendant's request, plaintiff did furnish a formal bid, by letter of June 24, to erect the building "according to plans and specifications" for $51,750. For plaintiff it is testified, and for defendant denied, that this bid was accompanied by a letter of the same date from plaintiff to defendant reading thus:

"Complying with your request of this morning, we are attaching herewith a proposal * * *. Please understand that in making

this proposal, we are not waiving any rights in connection with the former understandings which we have had with yourself or Mr. Kloepfel,—As you have explained that you have some special reason in mind in asking for a written proposal." '

Introduction of this last letter in evidence was not objected to on the ground that it was self-serving. Perkins v. G. N. Ry. Co. 152 Minn. 226, 232, 188 N. W. 564, and cases cited. "A man cannot make evidence for himself by writing a letter containing the state- ' ments that he wishes to prove. He does not make the letter evidence by sending it to the party against whom he wishes to prove the facts." Leach & Co. v. Peirson, — U. S. —, 48 S. Ct. 57, 72 L. ed. 75. The letter, anomalous at best, is in the record and evidence for plaintiff. Liberally construed and at the most, it was an assertion by plaintiff as of June 24, 1925—seven months to a day after the alleged contract that plaintiff should erect the building for $65,000—that plaintiff claimed some "rights" under previous "understandings," whether contractual or not does not appear. No sane view of the letter can construe that reference as one to any right to erect the building for $65,000, for concurrently plaintiff was proposing formally and unequivocally to erect it for $13,250 less.

For reasons now to be stated, neither that assertion of some "rights" under previous "understandings" nor the whole evidence for plaintiff established a contract. If the agreement, whether contract or mere negotiation, had been in writing and by their concurrent or subsequent action the parties had put a definite construction upon it, they would be controlled by the document as they had construed it. How much the more then is it necessary, where the agreement rests in parol, to go for its meaning to an unequivocal practical construction by the parties, if there has been one. For such a problem there can be no better determinant than the unequivocal conduct of both parties where it is unanimous in its "yes" or "no" to the single question presented. Defendant's letters, particularly those asking and even urging a bid, indicate that defendant intended no contract until cost of building and details of con-

struction had been fixed by a definite bid from plaintiff and its acceptance by defendant.

We do not stop there, for defendant's letters, standing alone, might also be considered self-serving. But they do not stand alone, for we have plaintiff's answer to them in its letter of May 29, 1925. That is not only plaintiff's answer, but its plain and inescapable *acquiescence in defendant's intention and assumption of no contract.* So we have the declarations, not only of plaintiff, but of its very official who made the contract, if one had been made. He does refer to an "understanding" arrived at on Mr. Kloepfel's first trip to Minneapolis, but he says also very distinctly, and without attempt at qualification, that "at that time it was understood that we were to make a detailed estimate of the cost and we would come to an agreement on the price." That alone negatives the idea that there had ever been any agreement on price. That negation is repeated by the statement that "there should be no reason why we should be very far apart on a fair cost"—just another way of saying that no cost, that is, no price, had ever been arrived at for the building. The whole letter, both in tone and substance, speaks irrefutably to the same fact.

Doubtless there was an "agreement" or "understanding" between Kloepfel and Wells, and it may have been disregarded by defendant in a way which reflects no credit upon it. There may have been an "agreement" or "understanding" that plaintiff would get the building subcontract. But the issue is not as to "agreement" or "understanding" but as to the making of a contract. Even though all the terms are agreed upon, finally—and yet there is no intention, by even one of the parties to be bound contractually until something more is done, e. g. the preparation and signing of a formal document to evidence the agreement—there is complete agreement but no contract. (Massee v. Gibbs, 169 Minn. 100, 210 N. W. 872, and cases cited.) A fortiori where, whatever else is settled, substantial terms are left open and subject to further agreement, which is never reached, there is not only no complete agreement but no contract at all. That is this case.

At the outset of such an inquiry as this there must be kept in mind the admonition of Judge Taft (quoting from Lyman v. Robinson, 14 Allen 242, 254) that "care should always be taken not to construe" as a contract communications "which the parties intended only as a preliminary negotiation," and (quoting from Rossiter v. Miller, 5 Ch. Div. 648, 659) to prevent litigants from being "entrapped into contracts * * * without the slightest idea that they were contracting." Strobridge Lithographing Co. v. Randall (C. C. A.) 73 F. 619. Compare Anderson v. Backlund, 159 Minn. 423, 199 N. W. 90.

The next inquiry is whether, there being an agreement which is asserted to be a contract, it is complete. It is not unless it is in all essential terms definite and certain or capable of being made so by the aid of competent evidence and permissible interpretation. If as a contract it be incomplete, a court can no more complete it for the parties than it could make it for them in the beginning. Gruesner v. Thatcher, 158 Minn. 470, 197 N. W. 968, and cases cited. Lind v. Russell, 161 Minn. 350, 201 N. W. 547. That rule was applied to an agreement for a lease in Goldstine v. Tolman, 157 Wis. 141, 147 N. W. 7; to one for a joint adventure in the distilling business in Sibley v. Felton, 156 Mass. 273, 31 N. E. 10; and to building contracts in King Lbr. Co. v. National Bank of Summers (C. C. A.) 286 F. 906; Faltis v. Wistein (Iowa) 195 N. W. 1008; and Meacham v. Pederson, 70 Wash. 479, 127 P. 114. The last case was in substance quite like this. The court said [at p. 482]:

"The whole testimony of the plaintiffs convinces us that the parties were simply negotiating for a contract, and never went beyond that stage; that no agreement was ever reached, and that no contract was ever entered into. The utmost which can be reasonably claimed from the evidence is that the parties intended to enter into a subcontract which should be reduced to writing when the terms were later agreed upon."

The whole proposition is condensed into the curt statement of Lord Wensleydale in Ridgway v. Wharton, VI H. L. C. 238, 304, 10 E. R. 1287, 1313:

"An agreement to be finally settled must comprise all the terms which the parties intend to introduce into the agreement. An agreement to enter into an agreement upon terms to be afterwards settled between the parties is a contradiction in terms. It is absurd to say that a man enters into an agreement till the terms of that agreement are settled. Until those terms are settled he is perfectly at liberty to retire from the bargain."

The present case is not one merely of disagreement between what Mr. Wells said in court and what he said out of court and in his letter. (If that were all, there might be a fact issue.) It is rather and plainly a case where both parties, by subsequent conduct, too clear to permit of doubt, have themselves established the absence of contract. The *two* of them having done that, it is legally impossible for *one* of them to reverse the situation, undo what the two have made an accomplished fact and, by his own unaided assertions as to what the original transaction was, make it into a contract.

Order reversed with directions to enter judgment for defendant.