STOKES et al. v. STOKES et al.

Middle Section. June 15, 1935.

Petition for Certiorari denied by Supreme Court February 15, 1936.

J. D. Murphree, of Shelbyville, for appellant.
Coldwell & Nance, of Shelbyville, for appellees.

FAW, P. J. This is a controversy over the distribution of the proceeds of an insurance policy issued by the National Life & Accident Insurance Company, of Nashville, Tennessee, on the life of Lewis K. Stokes, who died intestate in Bedford county, Tennessee, on May 4, 1932. E. C. Stokes, the father of said decedent, was appointed, and qualified, as administrator of the estate of his said deceased son, by and in the county court of Bedford county on May 12, 1932, and on May 18 (or May 23), 1932, the administrator collected $3,000 from the National Life & Accident Insurance Company in full settlement by said insurance company of its liability upon the aforementioned insurance policy.

The bill in this case was filed in the chancery court of Bedford county on January 30, 1933, by Eunice Gibson Stokes, the widow of the deceased Lewis K. Stokes, and the two infant children of the deceased, viz., Martha Elizabeth Stokes, aged four years, and Edna Marie Stokes, aged nine months—the two infants suing by their mother, the said Eunice Gibson Stokes, as next friend.

The bill is filed by the aforesaid complainants against E. C. Stokes, as administrator of the estate of Lewis K. Stokes, deceased, and the United States Fidelity & Guaranty Company, the surety on the bond of the administrator, E. C. Stokes, to obtain a decree against the defendants for the sum of $3,000 collected by the defendant-administrator from the National Life & Accident Insurance Company, as aforesaid.

The complainants in the original bill were made defendants to a cross-bill filed by the original defendant E. C. Stokes, administrator, etc., and the minor defendants were duly represented by a guardian ad litem appointed by the court.

The policy in question was issued on November 13, 1924, in consideration of a premium of $64.20 paid on delivery of the policy, and of a like amount on the 13th day of November of each year thereafter, during the life of the insured, until premiums had been paid for twenty full years; and by the terms of the policy the insurance company promised to pay $3,000 to Julia Caruthers Stokes, mother of the insured, upon receipt of due proof of the death of the insured, Lewis K. Stokes.

In his signed application for the insurance (which was made a part of the contract and attached thereto) the insured designated his mother, Mrs. Julia Caruthers Stokes, as his beneficiary, but reserved the right to revoke such designation; and one of the provisions of the policy was as follows:

"If, in the application herefor, the Insured has reserved the right to change the beneficiary he may, without the beneficiary's consent, enjoy every privilege and exercise every right granted in this Policy and may at any time and from time to time, designate a new beneficiary. Any change of beneficiary shall take effect only upon endorsement thereof on the Policy by the Company and be valid only if the Policy and all interests therein be free from assignment at the time of such change. The interest of any beneficiary dying before the Insured shall vest in the Insured, whose estate shall automatically become the beneficiary hereunder to the extent of such predeceasing beneficiary's interest."

Mrs. Julia Caruthers Stokes, who, as before stated, was named in the policy as the beneficiary, died on June 17, 1928, about four years prior to the death of the insured.

Lewis K. Stokes, the insured, did not designate another beneficiary, and, under the above-quoted provisions of the policy, the "estate" of the insured was, upon his death, the owner thereof, and it was proper for the insurer to pay the proceeds of the policy to the personal representative of the insured.

But it is provided by the Code (section 8456) that "Any life insurance effected by a husband on his own life shall, in case of his death, inure to the benefit of his widow and children; and the money thence arising shall be divided between them according to the statutes of distribution, without being in any manner subject to the debts of the husband."

So, aside from certain claims upon said fund which the defendant-administrator seeks to assert by his answer and cross-bill (which claims will be presently considered), the sum derived from said insurance policy was not assets for the payment of debts of the decedent, but was "exempt property," and, although collectible by the administrator, it should have been "distributed as soon as collected," to the widow and children of the insured (or guardian of the children) in their proper proportions. Agee v. Saunders, 127 Tenn., 680, 684, 157 S. W., 64, 46 L. R. A. (N. S.), 788; Chrisman v. Chrisman, 141 Tenn., 424, 430, 210 S. W., 783; Waldrum v. Waldrum, 14 Tenn. App., 342, 346.

The decree of the chancery court was that "the complainant, Eunice Gibson Stokes, individually and for the use and benefit of her two children, Martha Elizabeth Stokes and Edna Marie Stokes, have and recover of the defendant, E. C. Stokes, Administrator of the estate of L. K. Stokes, and his said Surety, the United States Fidelity & Guaranty Company the sum of Three Thousand ($3,000.00) Dollars, together with the accrued interest thereon from May 23rd, 1932, to date at six per cent, amounting to $314.00, aggregating $3314.00, less eight premiums of $64.30 each, aggregating $513.60 and the accrued interest thereon from May 23, 1932, to date

at six per cent, amounting to $53.75, and aggregating $567.35 or a judgment against E. C. Stokes and his said Surety for $2,746.65 and the cost of this cause, including the cost under the cross-bill, for which let execution issue.''

And ''that the cross-bill of cross-complainant be and the same is hereby dismissed and that said judgment rendered herein and interest thereon when paid, shall be paid to the Clerk and Master of this court by the defendant and his surety, to await the further orders of the court, and that Coldwell and Nance, attorneys at law are given a lien on said judgment for their reasonable solicitors' fees.'' Certain findings of fact and rulings of the chancellor on questions presented by the answer and cross-bill of the defendant-administrator are embodied in the decree, and are challenged by assignments of error in this court.

The defendant and cross-complainant E. C. Stokes, administrator of the estate of Lewis K. Stokes, deceased, and (as administrator of the estate of) Julia Caruthers Stokes, excepted to the decree of the chancellor and prayed an appeal therefrom to this court, which was granted, and he was permitted to perfect his appeal by paying into the hands of the clerk and master an amount covering said judgment, interest thereon to date of payment, and the cost of the cause in the chancery court of Bedford county, and by executing a good and solvent appeal bond in the sum of $350.

Although it appears from proof in the record that E. C. Stokes was appointed and qualified as administrator of the estate of his deceased wife, Julia Caruthers Stokes, it does not appear that E. C. Stokes was at any time made a party to the suit in the capacity of the administrator of the estate of Julia Caruthers Stokes, deceased; hence we will treat the appeal as prosecuted by E. C. Stokes, administrator of Lewis K. Stokes, deceased.

A further statement of facts is necessary to an understanding of the questions made by the assignments of error.

. The insured, Lewis K. Stokes, was born on March 17, 1906, and was therefore, approximately eighteen years and eight months of age at the time the policy in question was issued on November 13, 1924. He was at that time living with his father and mother at their home on his father's farm near Wartrace in Bedford county, and was a student in the Wartrace Training School. Later, on December 10, 1927, he intermarried with the complainant Eunice Gibson Stokes (then Eunice Gibson), but he and his wife remained at his father's home and he worked on his father's farm until February 19, 1931 (with the exception of about four months in Shelbyville), when he removed with his wife and child (Martha Elizabeth) to Old Hickory in Davidson county, Tennessee, and maintained his residence there until his death, although he died at Shelbyville in Bedford county.

The second child of complainant Eunice Gibson Stokes was born at the home of the mother of said complainant in Shelbyville on April

9, 1932, and on April 26th her husband, Lewis K. Stokes, went to Shelbyville to visit his wife, and about the time of his arrival at Shelbyville he was stricken with appendicitis and died at a hospital in Shelbyville on May 4, 1932.

When the policy in question was delivered to the insured, shortly after its issuance on November 13, 1924, it was turned over to his mother, the named beneficiary, and it remained in her possession until her death, and thereafter in the possession of E. C. Stokes, the father of the insured (who took possession of his deceased wife's papers), until he surrendered it to the insurer upon the payment to him, as administrator, of $3,000 after the death of the insured.

Eight premiums of $64.20 were paid on said policy. The first three premiums were paid by the mother of the insured, the fourth premium (November 13, 1927) was paid by the insured, and the last four premiums were paid by E. C. Stokes, the father of the insured.

The defenses interposed by the defendant below, so far as they are open for review in this court, are sufficiently indicated by the findings of the chancellor embodied in his final decree as follows:

"It satisfactorily appeared to the Court that the contract of insurance issued by The National Life and Accident Insurance Company in the sum of Three Thousand ($3,000.00) Dollars on the life of L. K. Stokes payable to Julia Caruthers Stokes, beneficiary, plainly provides that in the event the beneficiary dies before the assured the proceeds of said policy revert to the estate of L. K. Stokes, and that Julia Caruthers Stokes died prior to L. K. Stokes and that said Insurance Company has paid the proceeds of said policy of $3000.00 to the defendant, E. C. Stokes, Administrator of the estate of L. K. Stokes, deceased, on May 23, 1932; that there was not any necessity for E. C. Stokes qualifying as Administrator of the Estate of L. K. Stokes for the sole purpose of collecting said policy of insurance merely because it was a request of the Insurance Company.

"And it further appearing to the Court that the Administrator of L. K. Stokes, deceased, is also the administrator of the estate of Julia Caruthers Stokes, and under the cross-bill there is no suit of the administrator of the estate of Julia Caruthers Stokes against the Administrator of the estate of L. K. Stokes, deceased, to recover any premiums paid by Julia Caruthers Stokes for L. K. Stokes; that the only suit here is against Mrs. Eunice Gibson Stokes, the widow of L. K. Stokes and his two children, by these two administrators. Mrs. Eunice Gibson Stokes, individually and as next friend for her two minor children, Martha Elizabeth Stokes and Edna Marie Stokes, have sued the administrator of the estate of L. K. Stokes, deceased, who received the sum of $3000.00 from the Insurance Company. Under the cross-bill there

are two propositions, one is that the insurance absolutely belongs to E. C. Stokes, the grandfather of the minor complainants and the cross-defendants and the father-in-law of the widow, Eunice Gibson Stokes, because of the fact that the contract entered into between him and his son, L. K. Stokes during the lifetime of L. K. Stokes was that he, E. C. Stokes, was to have this insurance in the event of the death of his said son. No proof here can sustain any such contention, and E. C. Stokes contends in the alternative that, if this can't be made to appear, that the contract of insurance be reformed. From the facts adduced there is no state of facts of any transaction between the Insurance Company who made the contract with the deceased or the beneficiary or the insured to have it reformed or any motive or intention to have a reformation of the insurance policy. There were several debts paid and it seems strange to this Court that every little item taken up here and there for the last eight years that the parents have furnished this boy or paid for him as a part of the contract and agreement in its embryonic state, which the proof does not sustain said contract and agreement, and an equitable lien on this insurance not only estops the widow from receiving her part of it, but defeats the minors' interest in the fund.

"The assured, Lewis K. Stokes, had no necessity to change the contract of insurance, because the contract itself placed it in his estate, and saying that cross-complainant, E. C. Stokes, had the insurance policy is of no consequence, because the natural thing is that a boy who is living at his father's home would be to leave a policy of insurance with his parents where it would remain until collected. There was no delivery of this policy in any instance by the insured to either one of these parties, like any other infant that had anything, he delivered it to his father and mother, because it was their duty to maintain, educate and support the minor. Whatever money was furnished to him, the contract is not explicit or so expressed as to make out a case. The debts of the hospital, physician, and various other debts, are debts against the estate of L. K. Stokes under the law, including the matter of cost, and not against any individual. No contract here is shown that a Doctor had a contract with Mrs. Stokes, the widow to pay the bill, at the hospital. The only contract between the parties is between E. C. Stokes, somebody had to take charge and go on, and that is what all administrators do.

"Therefore, complainant is entitled to recover this policy of insurance with interest thereon from date it was paid, less the premiums paid on this policy by E. C. Stokes and interest thereon from the date of receiving same, and not from the date of the payment of the premiums."

The pleadings and proof in this record took a wide range and

510

dealt with numerous matters of an immaterial and nondeterminative character. It is only the ultimate, determinative questions of fact that are material here, and these are, we think, presented by the chancellor's findings and decree hereinbefore quoted, and in which we concur.

The fact that the policy on the life of Lewis K. Stokes was issued before his marriage does not prevent the proceeds from going to his wife and children under the statute. Rose v. Wortham, 95 Tenn., 505, 32 S. W., 458, 30 L. R. A., 609.

The beneficiary named in the policy did not have a vested interest therein, because of the reserved right of the insured to change the beneficiary. And, upon the death of the designated beneficiary in the lifetime of the insured, the "estate" of the insured became, by the terms of the policy, the beneficiary of the insurance, and upon his death, the proceeds of the policy were distributable to his widow and children, and were not in any manner subject to the debts of the insured. Code, section 8456.

We agree with the learned chancellor that there is nothing in the facts of the case to warrant a reformation of the policy of insurance by eliminating therefrom the above-mentioned provision. The insurance policy evidenced a contract between the insurance company and Lewis K. Stokes, the insured. The insurance company was, by amendment, made a defendant to the cross-bill of E. C. Stokes, administrator, and filed an answer denying that the cross-complainant was entitled to have said policy reformed; and there is no satisfactory evidence that the policy did not express the intention of the parties thereto. It is only when an instrument fails, by reason of mistake or fraud, or both, to express the intentions of the parties that there is any basis for a court of equity to reform the instrument. 23 R. C. L., p. 320.

We also concur in the chancellor's finding that the proof does not sustain the contention that the insured made an assignment of the policy by which "the insurance absolutely belongs to E. C. Stokes;" and in the chancellor's further conclusion that there is no sufficient basis in the record for the declaration by the court of an equitable lien, in favor of E. C. Stokes, on the proceeds of said policy for advancements made to, and debts paid for, the insured (other than premiums paid on the policy) which would defeat the statutory exemption of the insurance fund in favor of the widow and children of the insured.

We are also of the opinion that the chancellor did not err in denying to the cross-complainant a recovery from cross-defendant Eunice Gibson Stokes, out of her share of the proceeds of said insurance policy, "the sum of $426.50 covering funeral expenses, hospital account, nurse's account and medical attention incident to the last sickness and death of Lewis K. Stokes," and the cost of

administration of the estate of Lewis K. Stokes, including the sum of $45 paid to the Guaranty Company as surety on the bond of E. C. Stokes as administrator. The insurance fund is not assets of the estate for the payment of debts, or the costs of administration. Code, section 8456; Agee v. Saunders, supra.

■ There was no error in the allowance of interest below. A policy of life insurance bears interest as a matter of law from the date when payable. K. of P. v. Allen, 104 Tenn., 623, 58 S. W., 241; Peoples Bank & Trust Co. v. U. S. F. & G. Co., 156 Tenn., 517, 3 S. W. (2d), 163; Temples v. Insurance Co., 18 Tenn. App., 506, 79 S. W. (2d), 608.

■ Through his last assignment of error appellant complains that "the Chancellor erred in holding that no administrator was necessary for the collection of the proceeds of said policy, which should have been paid by the National Life and Accident Insurance Company of Nashville to complainant and her two children."

The statement of the chancellor (to which the above-quoted assignment of error is directed) that "there was not any necessity for E. C. Stokes qualifying as administrator of the estate of Lewis K. Stokes for the sole purpose of collecting said policy of insurance merely because it was a request of the insurance company," was immaterial, and did not affect the result, as there was an administrator who collected the proceeds of the insurance policy, and he and his surety are liable therefor to the lawful distributees thereof. State, for Use, etc., v. Anderson, 16 Lea, 321, 338; Waldrum v. Waldrum, supra, 14 Tenn. App., 342, at p. 346.

No complaint is made by the appellees of the credit allowed to cross-complainant for eight premium payments, instead of seven.

It results that the appellant's assignments of error are overruled, and the decree of the chancery court is affirmed. The costs of the appeal will be adjudged against the appellant and the surety on his appeal bond.

The cause will be remanded to the chancery court of Bedford county for the distribution of the funds held in the registry of the court in lieu of bond. Said fund will be distributed in conformity with the decree of the chancery court as affirmed by this court, and the proportionate part of the insurance fund belonging to the two mnior children of Lewis K. Stokes, deceased, to be held in the registry of the court until a guardian is appointed and duly qualified, to whom the funds of the minors may be paid.

Crownover and DeWitt, JJ., concur.