In re Katherine Joan RUDD, d/b/a Lad & Lassie, Debtor.

Walter DRAKE, Joan Rudd and Clyde Rudd, Plaintiffs,

v.

BANK OF TROY, Defendants.

Bankruptcy No. 82–10795.
Adv. No. 82–3220.

United States Bankruptcy Court,
W.D. Tennessee, E.D.

April 1, 1983.

Albert D. Noe, Jackson, Tenn., for plaintiffs.

Clint Butler, Jackson, Tenn., for Bank of Troy.

Walter Drake, Jackson, Tenn., trustee.

## MEMORANDUM OPINION AND ORDER

WILLIAM B. LEFFLER, Bankruptcy Judge.

The debtor in this Chapter 7 case has filed a Complaint on behalf of the trustee requesting that the Court avoid the mortgage of the Bank of Troy ("bank") on the debtor's real property except to the extent of $10,000.00. The debtor and the trustee also filed an objection to the secured claim of the bank and request that the bank's security interest in the debtor's real property be limited to $10,000.00. The bank filed an Answer to the above-mentioned Complaint on December 29, 1982.

An Order was entered on February 23, 1983, allowing the debtor's husband, Clyde Rudd, to join in the above-mentioned Complaint as a party-plaintiff and allowing the debtor and her husband to seek alternative relief in the form of reformation of a note and deed of trust signed by Mr. and Mrs. Rudd and given to the bank.

The debtor started dealing with the bank in July, 1979, when the debtor opened her business. The debtor throughout the period that the business was in operation obtained several loans from the bank and pledged as security for the loans certificates of deposit, inventory, and fixtures. In February, 1981, the debtor owed the bank approximately $80,000.00.

Needing a loan to continue operating her business, the debtor contacted Hickman Federal Savings & Loan, which held a first mortgage of approximately $12,000.00 on the home of the debtor and her husband. The debtor's home at the time had a value of $75,000.00. The debtor was advised by Gates Maloney, President of the Bank of Troy, that she could obtain a $10,000.00 loan from the bank if her husband signed a new note along with her and if the debtor and

her husband executed a deed of trust giving the bank a second mortgage on their home.

After deciding that it would not be to their advantage to refinance the first mortgage because they would lose the low interest rate on the first mortgage loan upon refinancing, the debtor and her husband signed a blank note and blank deed of trust, and the loan proceeds were deposited in the debtor's business account at the bank. The note and deed of trust were later filled out in the amount of $90,000.00.

The debtor and her husband contend that the bank's president led them to believe that the liability of the debtor's husband and the mortgage on the debtor's home would be limited, and therefore maintain that the note and deed of trust should be reformed accordingly to $10,000.00. The bank avers that the note and deed of trust were not blank when the debtor and her husband signed them and that they were aware of the effect of their actions.

As mentioned above, the Court finds that the note and deed of trust were blank and did not contain the $90,000.00 figure when the debtor and her husband signed the instruments. The debtor and her husband testified that the instruments were blank. To attack the debtor's credibility, testimony of the debtor at a deposition held January 10, 1983, was introduced showing that the debtor was aware that the new $10,000.00 loan was being consolidated with the prior $80,000.00 balance for a consolidation loan in the amount of $90,000.00. However, the debtor also introduced evidence from the same deposition of the debtor showing consistent statements throughout the deposition in which the debtor claimed that the instruments were blank when she signed them and contained no figures thereon, e.g., deposition of debtor: page (p.) 8, line (l.) 22; p. 9, l. 1; p. 9, l. 21; p. 16, l. 18; and p. 24, l. 1. Also, several witnesses testified that they had obtained loans from the bank and signed blank instruments, thus, indicating a practice of the bank was to have parties sign blank instruments and then later the bank would fill in the blanks on the instruments.

■ While the burden of proof is upon the party seeking to impeach the writing, a preponderance is all that is required. *McBee. v. Bowman,* 89 Tenn. 132, 14 S.W. 481 (1890); *Stone v. Manning,* 103 Tenn. 232, 52 S.W. 990 (1899). A preponderance of the evidence in this case shows that the debtor and her husband signed blank instruments.

■ From the above findings, the argument could be made that no contract existed between the parties. It is well settled that mutual assent is a basic requirement for the formation of a contract, and in the absence of such mutual assent, if the parties intend different exchanges of performance, there is said to be no "meeting of the minds" and, thus, no contract. *In re Jay's Trucking Co., Inc.,* 26 B.R. 73 (Bkrtcy.E.D. Va.1982), citing *King Lumber Co. v. National Bank,* 286 F. 906 (4th Cir.1923); *Restatement (Second) of Contracts,* §§ 17 and 20; 17 Am.Jur.2d, *Contracts,* §§ 18 and 146 (1964); 4 B Michie's Jurisprudence of Virginia and West Virginia, *Contracts,* § 26 (1974). It has also been stated that a material, fraudulent and unauthorized insertion in a blank space made by one party discharges any duty of the other party under the writing. P.R. Conway, *Outline of the Law of Contracts,* 672 (3rd Ed.1968); *Restatement (Second) on Contracts,* § 442(c). However, a finding that no contract and, thus, no mortgage existed in this case would be harsh and inequitable. Moreover, the Court finds that the parties in this case did, to an extent, have a "meeting of the minds".

■ A finding that there was a meeting of the minds is a prerequisite to reforming a written instrument. *Woodfin v. Neal,* 16 Tenn.App. 481, 65 S.W.2d 212 (1933); 66 Am.Jur.2d *Reformation of Instruments,* §§ 1, 4 (1964). It is not necessary, in order to reform a written instrument, that it be shown that particular words were agreed upon by the parties as words to be inserted in the instrument, it being sufficient that the parties had agreed to accomplish a particular object by the instrument to be exe-

cuted and that the instrument as executed is insufficient to effectuate their intention. 66 Am.Jur.2d at § 13.

In *In re McAlexander,* BK. No. 80–10148 and 80–10149 (B.Ct.W.D.Tenn., 1980), citing *Rolane Sportswear, Inc. v. U.S. Fidelity and Guaranty Co.,* 407 F.2d 1091, 1096 (6th Cir.1969), this Court stated that there are two grounds in Tennessee that form the basis for the equitable remedy of reformation: (1) mutual mistake, or (2) unilateral mistake induced by fraud or inequitable conduct. *See also: Stokes v. Stokes,* 19 Tenn.App. 504, 90 S.W.2d 543 (1935); *Pittsburg Lumber Co. v. Shell,* 136 Tenn. 466, 189 S.W. 879 (1916); *Walker v. Walker,* 2 Tenn.App. 279 (1925); *Jones v. Jones,* 150 Tenn. 554, 266 S.W. 110 (1924).

To protect an innocent party a written instrument may be reformed, especially where there is ignorance or a mistake on one side and fraud or inequitable conduct on the other, as where one party to an instrument has made a mistake and the other knows it and fails to inform him of the mistake or conceals the truth from him. 66 Am.Jur.2d *Reformation of Instruments,* §§ 24, 28. Moreover, where the relation of the parties is one of trust and confidence and the means of knowledge as to the terms and conditions of the contract were not equally open and accessible to both parties, the Court will much more readily draw the inference of fraud than in cases in which the parties stand on equal terms. 66 Am. Jur.2d § 27. Also, one who, in reliance upon a false but not fraudulent representation by another who occupies toward the former a relation of trust and confidence, signs an instrument which, through mistake, fails to include a sum to which the signer is entitled, can have the mistake rectified and recover the amount so omitted. *Id.*

In *Town of McMinnville v. Rhea,* 44 Tenn.App. 612, 316 S.W.2d 46 (Tenn.1958), the Tennessee Court of Appeals, in granting relief by ways of reformation, discussed the following:

In Gibson's Suits in Chancery, Fifth Edition (Crownover), at Section 978, it is said that every person who has business dealings with another has the right to expect that he will, in every matter connected with such dealings, do whatever good reason and good conscience require. It is further said that the parties to the contract impliedly contract with each other that in making and performing their engagements, honesty, frankness and fidelity will characterize their conduct.

In the present case all representations made by the bank to the debtor and her husband indicate an intent to limit the security interest in the home and the liability of Mr. Rudd to $10,000.00, and yet the bank had the debtor and her husband sign blank instruments, and then later the bank filled in the blank spaces with the $90,-000.00 figure. This conduct of the bank, if not fraudulent, is at the very least inequitable or unconscionable. The Court would as a general rule deny reformation where a party signed a blank instrument because the Court would find the signer negligent in so doing, but in a case like the case at bar where the parties from prior dealings shared a relationship of trust and honesty, the Court can only conclude that as a matter of equity the instruments should be reformed.

The bank contends that the debtor and her husband intended to mortgage all of the equity in their home for the consolidation loan. Not by any stretch of the imagination, can the Court find that any party would intend to mortgage his home with an equity of over $60,000.00 or intend to obligate himself on a $90,000.00 loan (on which he was never before liable) merely to obtain a $10,000.00 loan for a risky and dying business operation.

Therefore, the Court concludes that the deed of trust at bar should be and is hereby reformed to reflect that the mortgage held by the bank is limited to a lien in the amount of $10,000.00 (plus interest on said amount) and that the note at bar should be and is hereby reformed to show that the indebtedness owed by Clyde Rudd to the bank is in the amount of $10,000.00 (plus interest on said amount).

IT IS SO ORDERED.