STATE, *ex rel,* KINCAID *v.* HAMILTON.

(*Knoxville.*    September Term, 1902.)

1.  **STREETS AND HIGHWAYS.** Dedication. Concurrence
    of intention and acceptance necessary.

    In order to consummate a dedication at common law of pri-
    vate property to the public use, there must be not only a
    plain and unequivocal intention upon the part of the owner
    to appropriate the property to the public use, but it is es-
    sential that there be an acceptance by use, or otherwise, on
    the part of the public.  (*Post, pp.* 282-286.)

    Cases cited and approved:   Scott *v.* Cheatham, 12 Heiskell,
    719; Mathis *v.* Parham, 1 Tenn. Ch., 533.

2.  **SAME.** Same. May be revoked before acceptance.

    The owner of the property may revoke the dedication of a
    street or highway, however decisively his intention to ded-
    icate may have been manifested, at any time before there
    has been an acceptance either by formal action of the public
    authorities or common use, showing a clear intent to accept
    and enjoy the easement for the specific purpose of the pro-
    posed dedication.  (*Post, p.* 286.)

    Case cited:   Mathis *v.* Parham, 1 Tenn. Ch., 533.

3.  **SAME.** Same. Semble.

    The mere fact of subdividing a large tract of land into smaller
    parcels or lots and laying off streets, avenues and alleys
    thereon, as shown by a map recorded in the office of the
    register of the county, and selling lots by references to said
    map, without acceptance by the public by use, or otherwise,
    does not constitute a dedication of the land covered by said
    streets and highways to the public use.

4.  **SAME.** Same. Rights of purchaser of lots bought
    with reference to a plat.

    Where a large body of land has been platted into a town site,

State v. Hamilton.

and a map thereof, showing subdivision into lots, streets and alleys, has been duly recorded in the office of the county register, a purchase of one of said lots by reference to the plat or map only acquires an easement in such of said streets or ways as are necessary or convenient for him to reach a highway. (*Post*, *pp.* 284-285.)

Cases cited: Badeau *v.* Mead, 14 Barb., 328; Chapin *v.* Brown, 10 Atl., 639; Bell *v.* Todd, 51 Mich., 21 (16 N. W., 304).

**5. SAME. Same. Same. Case in judgment.**

A private corporation owning a large body of land platted it into a town site, laying off streets, avenues and alleys, and sold a number of lots to complainant by a reference to a registered map showing subdivisions into lots and streets platted thereon. There was no acceptance of the proposed dedication, except such as might be inferred from the purchase of lots by reference to the map. Under foreclosure proceedings against the owner, defendants bought several large portions of the town site, and by enclosing them obstructed several of the streets shown on said map. Bill by complainant to compel defendant to open the streets so obstructed.

HELD: That complainant was not entitled to have all of the streets obstructed opened, but only such as abut on his lots and are necessary to convenient ingress and egress to his property. (*Post*, *pp.* 278-287.)

Cases cited: *Supra.*

Cases distinguished: Wilson *v.* Acree, 97 Tenn., 378; Mayor *v.* Howard, 1 Tenn. Cas,, 68; Mayor *v.* Gill, 1 Tenn. Cas., 326.

---

FROM CLAIBORNE.

---

Appeal from Chancery Court of Claiborne County. HUGH G. KYLE, Chancellor.

ROGERS & ROGERS, for Kincaid.

TEMPLETON & CARLOCK, MONTGOMERY & ARNOLD and H. Y. HUGHES, for Hamilton.

JOHN W. GREEN, Special Judge, delivered the opinion of the Court.

In the year 1890, G. W. Montgomery and others organized under the laws of Tennessee a private corporation for profit, known as the East Cumberland Gap Land Company, for the purpose of purchasing large tracts of real estate and subdividing the same into smaller tracts, town sites, lots, streets and alleys. Prior to obtaining this charter the said incorporators had already in the year 1889, purchased from T. A. Hamilton and J. B. Hamilton a portion of their farms, and also other adjacent lands from other owners, and had laid off and platted same into a town site under the name of East Cumberland Gap. Upon the creation of said corporation, the absolute title to the lands thus acquired was transferred to it by said incorporators, free and clear of all liens, in consideration of the stock of the company; and a new map of the town site was made, and placed on record in the register's office of Claiborne county. The East Cumberland Gap Land Company sold many of these lots at public and private sale with reference always to said map.

In the year 1890 the Louisville & Nashville Railroad extended its line of railway into the town, and constructed a depot and other buildings. A large

State v. Hamilton.

hotel was constructed, at a cost of something like $20,000, a school building and a church were erected, and the town soon contained a population of between 400 and 500 people.

All the streets and alleys appearing upon the said map were dedicated, but they were never accepted or recognized by any municipal or county authority, nor was there any acceptance of the dedication by public use or otherwise, except such as arises from the purchase of lots as laid down on and with reference to said map. There are 144 blocks, in all containing many hundreds of lots, intersected at convenient intervals by streets, avenues and alleys.

In the year 1894 a general creditors' bill was filed in the chancery court at Tazewell for the purpose of having the East Cumberland Gap Land Company wound up as an insolvent corporation. This proceeding disclosed that in 1892, after many lots had been sold, the town company had executed a deed of trust to secure certain indebtedness due to stockholders. The said bill was sustained, and all the real estate of the East Cumberland Gap Land Company was sold for the purpose of paying its debts and distributing its assets. The real estate was sold in comparatively large bodies, and bought as follows: One portion by defendant Montgomery, one portion by defendant Devine, and one by defendant J. B. Hamilton. The Bank of Shawanee and P. G. Fulkerson, and probably some others, bought the other portions. The pro-

ceedings under said insolvent bill did not undertake to close up any of the streets or alleys, and, as neither lot purchasers nor the public were parties thereto, their rights necessarily could not have been affected.

Shortly after its purchase, the Bank of Shawanee conveyed the land it had bought to the defendant, T. A. Hamilton, describing the outside boundaries by a reference to the recorded map of the town site. The said P. G. Fulkerson also conveyed the lands he had purchased to the same defendant, with like description; and the land bought by defendant J. B. Hamilton in the insolvent proceeding was likewise described with reference to said map.

The said T. A. and J. B. Hamilton, about the year 1899, undertook to inclose the property thus acquired by them, and use it as farm property, thus practically obstructing all the streets and alleys inside the boundaries conveyed to them. Thereupon the complainant, Kincaid, filed this bill for the purpose of requiring the Hamiltons to remove the fences placed by them on said streets and alleys, and to enjoin them from making further obstructions.

None of the streets on the map have been worked, except for a short distance around the hotel, and no street within defendants' inclosures has been worked at all. The complainant, Kincaid, had bought from the East Cumberland Gap Land Company, while it was yet a going concern, lots Nos. 5, 6 and 7 in block 49, and had also obtained by purchase from the in-

dividual owners lots Nos. 12 and 13 in block 85, on
the corner of Scott street and Virginia avenue. Sub-
sequent to making these purchases, and subsequent
also to the termination of said insolvent proceedings,
the complainant, on July 20, 1897, purchased what
is known as the "Watts Farm," a tract of land lying
near to and north of the town site. In the same year
he also purchased a small tract of three acres lying
between his farm and the town site, for the purpose
of providing himself with a right of way to said Scott
street, which street afforded him the nearest and most
direct route from his farm to the depot in East Cum-
berland Gap.

The defendants have obstructed Scott street with
their fences in three different places, but, except in
this particular, the obstructions erected by defend-
ants result in no practical injury or damage to com-
plainant. East Cumberland Gap was never incor-
porated as a municipality, and, while it contains now
a population of between 200 and 300 people, the boom
which at one time gave promise of its becoming an
important place has long since collapsed. There is
no market for the lots, and all hope of building up
a town has been abandoned. It does not appear that
there ever was, or that there is likely to be, any pub-
lic demand for the streets and alleys which defend-
ants have obstructed, and the lots inclosed by them
are valuable only as farming land. The complainant

himself gave assent to an inclosure or obstruction made in one portion of the town site.

Upon this state of facts the court of chancery appeals, following the decree of the chancellor, held that complainant was entitled to have every street, avenue and alley appearing on the map opened and kept open. Defendants have appealed, and the questions in issue have been most elaborately and ably argued.

The case of *Wilson* v. *Acree,* 97 Tenn., 378 (37 S. W., 90), is relied on by complainant to support this view. That was a contest over a single alley in the city of Chattanooga, where it appeared that the lot owners at the end of the alley had purchased when the alley was opened, and that it was valuable for ingress and egress to their lots, and that there had been a dedication thereof by public user.

The case of *Mayor* v. *Howard,* 1 Shannon's Cas., 68, is also cited in support of this contention. There was no written opinion in this case; but from the meager facts appearing in the syllabus, which is alone published, it appears to have been a suit by the city of South Memphis against the original dedicators of a public square to prevent them from closing it. The court held in favor of the city, declaring that the square had been dedicated to the public use, and refused to allow it to be closed.

The case of *Mayor* v. *Gill,* 1 Shannon's Tenn. Cas., 326, is said to support the complainant. That suit also involved the question of closing a public square.

State v. Hamilton.

It appeared that the square had been exempt as such from taxation from the year 1851 to the year 1868, and that there had been at least an implied accept- ance of it by the town of Tullahoma. The court held that the public had acquired fixed rights in said square, and directed it to be kept open.

In both the cases last referred to the suits were brought by towns in their municipal capacities, and it is apparent that the squares in question had been accepted by the municipal authorities, and that lots had been bought with reference thereto. In all three of the cases mentioned it appears that the rights of the public had attached.

Elliott, Roads & S. (2d Ed.), sec. 120, is also relied on in support of complainant's contention. The au- thor, in the first part of this section, announces the well-recognized doctrine that those who buy lots abut- ting on a street laid out on a map or plat have a right to insist upon the opening of said street. He then follows this up with the statement that all who buy with reference to a general plan disclosed by a map or plat acquire a right in all the public ways desig- nated therein. The learned author must have used the expression "public ways" to mean ways in which the public had acquired rights by acceptance, user or otherwise.

At any rate, the weight of authority is opposed to complainant's contention. The sound rule, it seems to us, is laid down in Jones, Easem., sec. 347, as fol-

lows: "When land is sold by reference to a plan upon which several streets and avenues are laid out, the grantee does not necessarily acquire an easement in all such streets or ways. He acquires an easement in the street or way upon which his lot is situated, and in such other streets or ways as are necessary or convenient to enable him to reach a highway. He acquires no easement in a street or way which his land does not touch, and which does not lead to a highway; and he is not entitled to an injunction or other remedy by reason of an obstruction to such street or way."

The cases cited by the author, so far as we have had access to them, fully sustain this statement of the law. *Badeau* v. *Mead*, 14 Barb., 328, was a case where the plaintiff purchased one lot in a village site which had been laid off and platted into lots, streets and alleys. The defendant obstructed one of the roads by an inclosure, and plaintiff enjoined him. The court granted relief to the extent that the obstructed road adjoined plaintiff's premises, and, if necessary, out to the common highway, but declined to go further.

Where complainants, who bought a lot with reference to a plat, one side of the lot being bounded by an avenue, sought not only to have said avenue opened, but also to have the fences obstructing other streets removed, the supreme court of Rhode Island held that, though complainants may have a technical right to pass and repass over the other streets, it would seem that a removal of the fences therefrom

would be of no real benefit to them, while it would oblige the defendant to incur a great deal of additional trouble and expense to protect his property, and that complainants would be left to their remedy at law, without ordering a removal. *Chapin* v. *Brown,* 10 Atl., 639.

The supreme court of Michigan, through Judge Cooley, in the case of *Bell* v. *Todd,* 51 Mich., 21 (16 N. W., 304), which is quite similar in its facts to the one at bar, where the unused streets and alleys of a "boom" town were obstructed, refused to have the obstructions removed upon a suit by lot purchasers who bought with reference to the plat of the town site, because it would inflict serious injury on defendant, and prevent his making valuable use of his premises, with no corresponding advantage to any one.

The syllabus of this case, which correctly summarizes the holding of the court, is as follows: "The rule that those who purchase by reference to a plat are entitled to the use of the street upon which the purchased premises appear to abut and of all connecting streets does not apply in a case where a plat was never acknowledged, nor the dedication thereby accepted, nor the streets laid out on it used or capable of use; and where the streets were neither ways of necessity nor of convenience, and no equities were shown against closing them for the benefit of individual interests."

This court has held, in the case of *Scott* v. *Cheat-*

*ham,* 12 Heisk., 719, that, when the owner sells property bounding the same by streets and alleys, he would be estopped, as against his vendee, from denying the existence of such streets and alleys; but an easement is not created unless the dedication is accepted by the public by user or otherwise. "Two things are necessary to constitute a dedication at common law of private property to public use: First, there must be a plain and unequivocal intention on the part of the owner to appropriate the property to public use; and, secondly, there must be an acceptance by user or otherwise on the part of the public." Id.

To the same effect is *Mathis* v. *Parham,* 1 Tenn. Ch., 533, and authorities there cited, where the following language is used: "To preclude the owner of land from revoking the dedication of a street, however decisively his intention to dedicate may be manifested, there must be an acceptance either by formal act of the public authorities or by common use, showing a clear intent to accept and enjoy the easement for the specific purpose of the proposed dedication."

A municipal corporation, when it is expedient, may close a public street, but this must be done subject to the right of lot owners whose property abuts on said street to compensation. In such case, however, it seems that the owner of property on another street in the same municipality would have no right to compensation. *State* v. *Taylor,* 107 Tenn., 455 (64 S. W., 766).

State v. Hamilton.

In view of these principles and the facts of the case, we are constrained to hold that the court of chancery appeals erred in directing all the streets and alleys on the map of East Cumberland Gap to be opened. Complainant's relief will be limited to the opening of such streets, avenues and alleys as his lots abut on. This will afford him the necessary and convenient ingress and egress to his property, and will cause no unnecessary injury to defendants.

The decree of the court of chancery appeals is accordingly so modified.