R. M. REAMS *et ux. v.* BOARD OF MAYOR AND ALDERMEN OF
TOWN OF MCMINNVILLE.*

(*Nashville.* December Term, 1925.)

1. SCHOOLS AND SCHOOL DISTRICTS.

City authorities, having selected lot for erection of school, are not
precluded from reconsidering and selecting another. (*Post, pp.*
41, 412.)

2. SCHOOLS AND SCHOOL DISTRICTS.

Courts will not review discretion of city authorities as to location of
school buildings. (*Post, p.* 412.)

3. INJUNCTION.

Courts will not interfere by injunction with city authorities in select-
ing location for school building, in absence of clear showing of cor-
ruption or fraud. (*Post, p.* 412.)

4. INJUNCTION.

Complaint to enjoin board from selecting new location for school
building after one had been chosen and purchased *held* not to state
facts showing corruptness or fraud, except as mere conclusions of
pleader. (*Post, pp.* 412-414.)

5. REFORMATION OF INSTRUMENTS.

Complaint seeking reformation of deed to city authorities so as to
specify purpose of transfer as erection of school building *held* too
vague and indefinite. (*Post, pp.* 414, 415.)

6. REFORMATION OF INSTRUMENTS. To warrant reformationt of
deed, mere allegation that something was omitted is insufficient,
but pleader must explain how mistake occurred, and show that he
was without fault. (*Post, pp.* 415, 416.)

7. **SPECIFIC PERFORMANCE.**

Court would be very reluctant to decree specific performance of deed so as to require city authorities, as grantees, to erect school building thereon, except in extraordinary case. (*Post, pp.* 416, 417.)

---

*Headnotes 1. Schools and School Districts, 35 Cyc., p. 936; 2. Schools and School Districts, 35 Cyc., pp. 931, 937; 3. Injunction, 32 C. J., Section 396; 4. Injunction, 32 C. J., Section 533; 5. Reformation of Instruments, 34 Cyc., p. 971; 6. Reformation of Instruments, 34 Cyc., p. 974; 7. Specific Performance, 36 Cyc., p. 552.

---

FROM WARREN.

---

Appeal from the Chancery Court of Warren County. —Hon. T. L. Stewart, Chancellor.

J. J. Finley and Ewell & Ewell, for appellants.

Turner & Haston, F. H. Mercer and Roberts & Roberts, for appellees.

Mr. Justice McKinney delivered the opinion of the Court.

The bill in this cause was filed by R. M. Reams and wife, Jessie C. Reams, who sue individually and in their own behalf as taxpayers of the town of McMinnville, and also in behalf of all the other taxpayers in said town, to enjoin the board of mayor and aldermen of the town of McMinnville from erecting a high school building on what is known as the Ross lot, and to require them to erect said building on what is known in the record as the Reams lot.

The bill also sought to have a deed executed by complainants to defendants reformed so as to allege, as a part of the consideration, the agreement on the part of defendants to erect a high school building on said lot, and to use said lot solely for school purposes.

Subsequently, an amended bill was filed, and the bill, as amended, was demurred to upon many grounds.

The pleadings are voluminous, and we can briefly dispose of the questions raised without setting them out in detail. In fact, we find little controversy either as to the facts or the law affecting the questions involved.

It is conceded by all parties that, by virtue of chapter 50 of the First Extra Session of the legislature of 1913, the defendants were authorized to issue bonds for school purposes, after having first submitted same to the voters of the town of McMinnville. It was agreed that such an election was held, and that the defendants were authorized to, and did, issue $65,000 of bonds for the purpose of acquiring a site and erecting a high school building thereon. It is also agreed that the defendants have the sole and exclusive power and right, under the charter of McMinnville, to select the site upon which to erect a building, to determine the character of the building to be erected, and to superintend its construction. It is also agreed that some division existed as to the best location for said high school, and that the defendants submitted that question to the voters, in an election called for that purpose, as to which of three sites afforded the best location; the result being four hundred eighty-two votes for the Reams lot, three hundred twenty-nine for the Ross lot, and ninety-nine for the Cantrell lot. It is also conceded that this was in no sense a legal election,

that it was not binding on the defendants, but that it was only advisory, and that the defendants had a perfect right to locate the said school independently of the wishes of the voters as expressed in said preferential election.

After this election was held, the defendants purchased from complainants the Reams lot, taking a warranty deed therefor in the usual form containing the general covenants of warranty, and paid complainants therefor $7,500 in cash.

Subsequently, and before steps had been taken with respect to the construction of said building, the owner of the Ross lot, containing twelve acres, agreed to donate same to the city, if the defendants would locate said building thereon.

It also appears from an ordinance passed by the city that they were advised by their architect that the building, as planned, could be erected much cheaper on the Ross lot than it could on the Reams lot, and that, in order to construct same on the Reams lot, it would have to reduce the size and character of building desired considerably.

In this situation the city repealed its former ordinance, and decided to erect said building on the Ross lot, whereupon the complainants filed the bill in this cause enjoining them from proceeding further.

It is said that, having once exercised their discretion by selecting the Reams lot, they were without power or authority to change the location to some other lot.

No authority has been cited in support of this proposition, and it would be a very unfortunate situation if a board were held to be without power to change a location where it deemed same advantageous to the city.

Certainly, in theory, at least, the city would be benefited by the change, and we can conceive of no ground upon which any individual or individuals could complain. Surely not upon the ground that it would be to their pecuniary advantage to confine the city to the first location selected.

It is alleged in the bill that the defendants exercised an erroneous discretion in selecting the Ross lot, it being alleged that the Reams lot is the more desirable, and that the building can be more advantageously, and, perhaps, as cheaply, erected thereon as it could on the Ross lot.

The decisions are uniform to the effect that the courts cannot, and will not, review the discretion of the city authorities in such matters, and it is equally well settled that they will interfere by injunction only where it clearly appears that the authorities are acting corruptly or fraudulently.

In the original bill no fraud was charged, but in the amended bill the allegations as to fraud are as follows:

"Complainants further charge and represent that said defendant board of mayor and aldermen of the town of McMinnville, Tenn., acted in bad faith, and therefore fraudulently in undertaking to change said location for said high school building from the Reams lot to the Ross lot, and that it is not true that practically the same building can be erected on the Ross lot cheaper than on the Reams lot, and in so representing, or in substance as set out in the resolution or ordinance enacted by said board of mayor and aldermen, rescinding the site or location of said high school building, the defendant, by and through its said board of mayor and aldermen, are misrepresent-

ing the fact in that regard, and are taking this position for the purpose of furnishing them an excuse or a pretense for their action in changing the former location of said high school building, and, as before stated, are acting fraudulently and in bad faith with the citizens of the town of McMinnville, and this is more evident and convincing, that is, of bad faith on the part of the defendant board of mayor and aldermen, since by their own actions, that is, in submitting this location question to the voters of said town as hereinbefore set forth, the said board of mayor and aldermen, as it is now constituted, wholly ignore and disregard the instructions of the people or voters of said town, as to the location of said school building, stultify themselves, and break faith with the people, citizens, voters, and patrons of said school, and, if these matters are not sufficient to constitute fraud and bad faith, complainants are unable to conceive of a state of facts that would be more convincing of the intention and purposes of said board of mayor and aldermen, and complainants base these charges upon these facts, which are indisputable, and cannot be controverted.

"In this connection complainants further show that each and every fact and circumstance now existing as to said change of said location show a well-matured intent on the part of said board of mayor and aldermen of the town of McMinnville, Tenn., to locate said building on said Ross property, and not on said Reams property, regardless of the results, and it is here charged as a fact that said high school building can be built and erected on said Reams property as cheap as on said Ross lot, as shown in said original bill, and really cheaper, on ac-

count of the proximity of existing streets, and water-works system, and the exercise of the discretion in said board of mayor and aldermen in causing the change is not only arbitrary, unreasonable, captious, and without just cause, but is absolutely an abuse of discretion on their part as aforesaid.''

We agree with the chancellor that the foregoing allegations are mere conclusions of the pleader, and do not set forth any facts that would justify the court in decreeing that the defendants were acting corruptly or fraudulently. The idea seems to be that, simply because the defendants submitted the matter to the voters, purchased the Reams lot, and then decided to construct the building on the Ross lot, such facts, in and of themselves, constituted fraud and bad faith, which is not the case, and a much stronger showing than is here made would be required before the court could say that the defendants were acting corruptly.

Taking up the other branch of the cause as to reforming the deed, we quote the allegations of the amended bill pertaining thereto as follows:

''Complainants charge that in the negotiations leading up to said deed, and the whole transaction thereof, it was understood as a part of the consideration for said property that the same was to be used by said defendant for a site upon which to build, construct, and equip a high school building, with said money arising out of the sale of said bonds, and by mutual mistake, inadvertence, error, and oversight this stipulation was left out of said deed when the same was written, and same was intended to be inserted therein by all the parties concerned therewith, and complainants now show that they would not

have sold said property for any other purpose than the erection thereon of said high school building, and that this part of said agreement was a material inducement, and the real and true inducement that caused complainants to make and enter into said contract of conveyance.

"The said deed, consequently failing to show the full and complete contract as made by the said parties thereto, on its face should be reformed, so as to comport with the actual contract and agreement that was so made at the time of said contract.

"In this connection it is further shown by the complainant that the ordinance or resolution passed by the said town of McMinnville shows on its face that said property was purchased by it for the purpose of building and erecting a high school building thereon, and that was the intention and agreement of all the parties throughout the whole transaction."

In our opinion, these allegations are too vague, indefinite, and uncertain. They lack positiveness. No facts are alleged. It is not expressly averred that it was agreed that these provisions were to be inserted in the deed, or that the draftsman was instructed to incorporate them in the deed, or any explanation offered as to why the draftsman omitted these important provisions, or an allegation that the complainants did not read the deed before executing it, or that they did not know that these provisions were not in the deed.

It is not sufficient to merely allege that something was left out. The pleader must explain how the mistake was made, and show that he was without fault in the matter.

Taking the pleading as a whole, we are impressed with the idea that complainants executed the deed believing

and expecting that the school building would be erected upon the lot conveyed, but without any express agreement that such a provision was to be inserted in the deed.

Even assuming that the allegations were sufficient to justify a reformation, the court would be very slow to enjoin the defendants from proceeding with the construction of said building on the Ross lot. It would require a most extraordinary case to induce the court to decree a specific performance of a contract of this character. We can hardly conceive of a case of this nature where a specific performance would be decreed, but the court would leave the aggrieved party to rescission or action for damages. Here the complainants expressly state that they are asking for no damages, and upon the question for rescission there is incorporated into the original bill an ordinance by the city, which contains the following provision:

"That said Reams lot so purchased from R. M. Reams and wife, for the consideration of $7,500, be offered back to them without any expense to them whatever, upon them paying to the town of McMinnville, Tenn., the said sum of $7,500, and the town of McMinnville, Tenn., will execute to R. M. Reams and wife a deed to the same, if they see proper to take said lot back."

While complainants allege in their bill that the lot is worth much more than $7,500, and that they would not have conveyed same for said sum except upon the idea that it would enhance the value of their other property by virtue of having the high school building constructed thereon, it appears that they have an opportunity of being placed in statu quo, and will thereby suffer no pecuniary injury.

Taking the cause as a whole, it appears to be one of those ordinary causes where a division exists in a town as to the location of a school building, in which matter the judgment and discretion of the authorities is paramount and conclusive, in the absence of strong allega tions of fraud and corruption. The complainants are, no doubt, disappointed, and, perhaps, adversely affected financially as a result of a change which the minds of defendants underwent, but this is an experience com mon to inhabitants of towns and villages.

While it is urged that the bill should have been dismissed for multifariousness, we have not dealt with that question, for the reason that, even if this were true, the court, under the general practice, would order the bill to stand as two suits. On the other hand, we have preferred, as we always do, to deal with the cause upon its merits.

After carefully considering the cause in its various phases, and the numerous questions raised and pressed with earnestness and ability, we have concluded that the bill is without merit, and that the complainants should not further retard the defendants in the construction of a high school building, which, no doubt, is much needed in McMinnville.

For the reasons stated herein, the decree of the chancellor will be modified to the extent that the bill will be dismissed outright, at the costs of the complainants.