The TOWN OF McMINNVILLE v. OSCAR RHEA and WIFE, ETHEL RHEA.—316 S. W. (2d) 46.

Middle Section.    March 28, 1958.

Certiorari denied by Supreme Court September 1, 1958.

C. E. Haston, Frank Davenport, McMinnville, for appellant.

W. G. McDonough, Walter H. Griswold, McMinnville, for appellee.

## I

SHRIVER, J. The original bill herein was filed to reform a deed, executed by the defendants to the complainant, Town of McMinnville, it being alleged that, by mutual mistake, the description in the executed deed did not include all of the land agreed to be conveyed.

The land was purchased by complainant for the purpose of erecting a High School thereon. After entering into a written agreement to sell, the defendants executed a deed which deed was thought by the complainant to contain all of the land agreed upon but shortly before the filing of the bill herein it was discovered that it did not include in its description certain lands comprising Lots No. 27 to 41, inclusive, and it is charged that the failure to include said lots was a mistake of the draftsman of the deed and did not conform to the intention and purpose of the seller or purchaser.

The bill prays that the deed be reformed so as to express the real contract of the parties thereto.

The defendants filed their unsworn answer, signed only by their attorney, in which they denied the material allegations of the bill, and asserted it was not the intention of the defendants to convey the disputed property to the complainants.

The cause was heard before the Chancellor on oral testimony, at the conclusion of which he denied the relief prayed for by complainants and dismissed the bill.

Complainant, Town of McMinnville, prayed and perfected an appeal to this court and has assigned errors.

## II

### Assignment of Errors

There is only one assignment of error, which is to the effect that the Chancellor erred in dismissing the original bill and in not decreeing a reformation, for mutual mistake, of the deed executed by Oscar Rhea and wife, Ethel Rhea, to the Town of McMinnville, so as to include the disputed land.

It is said that the great preponderance of the evidence is in favor of the complainant's position.

### III

Briefly reviewing the evidence, we find that Mr. Herman Spivey, Mayor of McMinnville, testified that as Mayor he was one of the officials of the city who negotiated for the purchase of the land described in the bill. Their negotiations were with Mr. Haskell Knight, real estate dealer, who represented himself as the agent of the owners for the sale of said property. After considerable negotiations they reached an agreement to purchase. At the last meeting in the course of said negotiations Mr. Rhea, the defendant, was present, as was Mr. Knight, the real estate agent, and in consequence of their agreement Mr. Rhea turned over a deed to the city, which they thought contained a description of all the land they had agreed to purchase. When Mr. Spivey was asked:

"Q. What was the understanding of what you were buying?" He answered, "Mr. Rhea's entire holdings out there."

He was then asked if there were any exceptions made or reservations as to any property that Mr. Rhea owned

at the location in question, and he answered that he never heard of any exceptions. He further testified that all the property they were negotiating for was under fence and that it was their understanding that they were buying all of Mr. Rhea's property enclosed by a wire fence that they had seen and examined.

Mr. Haskell Knight was called as a witness for the complainant and testified that he was a real estate agent; that he had a contract with the defendants to sell their property, which included the entire premises on which Mr. and Mrs. Rhea lived at the time; that he negotiated extensively with the members of the School Board and the city officials regarding same; that the property that he proposed to sell for the defendants, Mr. and Mrs. Rhea, was known as the Frank Winton place and was all under fence at the time.

He further testified that after he had acquired a contract with the Rheas to sell, he inquired of Mr. Rhea about the boundaries of the property and was told "Just show them around the fence." The only reservation he made was that he wanted his corn crop off of a small field, the rest being in pasture. Mr. Knight said that there was no exclusion of any part of the property, and that he represented to the city in his negotiations that they were getting all the land that was enclosed by a wire fence and known as the Winton place and owned by Mr. and Mrs. Rhea.

On re-direct examination he was asked if the fence around this place was plain to be seen by anybody and he answered that it was.

Dr. C. M. Clark was a member of the Board of Education of McMinnville at the time in question. He testi-

fied that he went on the property known as the Winton farm, owned by the defendants, Mr. and Mrs. Rhea; that there was a fence around it and some cross-fences, but that the outside fence was obvious to all and plain to be seen. He further testified that, as a member of the School Board, it was his understanding that they were buying the entire Winton farm which was enclosed in the above described fence.

Dr. Clark was asked if the lots which were left out formed an integral part of the location of the school building and if they were important to be included, and he answered that they were very important; that in building on the property they had put the corner of the auditorium on the land in dispute thinking that it belonged to the city.

Another witness called for the complainant was Mr. Dock Bragg, a member of the Board of Mayor and Aldermen of the Town of McMinnville at the time in question, and on the building committee of the board. This witness corroborated the others in their statements that they thought they were buying all of the property which was enclosed under fence.

Mr. J. L. Nunley, Superintendent of McMinnville Schools, testified that he was familiar with that property and thought they were getting it all. He was asked to describe the fence and he said that it was a woven wire fence around the outside and that the cross-fences were barbed wire; that there were four or five acres in corn and the rest in pasture. He stated further that the property was so located that you could stand at a point near the house and see the boundaries of the farm. He further testified that he inquired of Mr. Knight, the agent, as to

618

the boundaries and was told that the outside fence represented the boundaries of the property being sold.

This witness then testified that after the deed had been delivered and they had begun the erection of the school building, the defendant, Mr. Rhea, came to him and told him that he had discovered that he owned three lots which were not included in the description of the property sold to the School Board. Mr. Rhea said that he thought that he had conveyed all of his property to the city until he got a notice from the tax assessor's office that he still owed taxes on these three lots. Mr. Rhea then proposed to sell these three lots to the city for $2,000 and there were some negotiations to that end.

It then appears that Mr. Rhea discovered that he had a deed to some of the lots which had not been recorded. He then contacted this witness and told him that he had discovered that he owned all of those lots and had not conveyed them to the city and he then wanted additional money to convey them. In response to a question by the court this witness answered, with respect to what Mr. Rhea told him, as follows:

"He said he didn't know that he owned these lots. He thought he sold them to the City until he got a tax notice that the taxes had not been paid, and he said he looked and he found a deed for those three lots and he told me who he got them from but I don't remember who it was."

The next witness was Mr. Charles Hixson, the City Engineer, for the Town of McMinnville. He quoted Mr. Rhea, defendant, as saying, if he hadn't gotten a tax bill on those lots he never would have known about the

mistake because he thought they were all conveyed originally to the city.

Mr. Thomas Mullican, Chairman of the School Board at the time in question, corroborated the prior witnesses concerning the agreement reached by the parties and the discovery of the mistake.

Mr. C. E. Haston, City Attorney for the Town of McMinnville, testified that Mr. Rhea came to his office a week or two before the filing of the bill herein and stated that he owned some additional lots that had not been conveyed to the city. Mr. Rhea told him that he thought he had sold the city everything he had out there and knew no different until he got a tax notice on some lots, and he said he went back home and got to looking through his deeds and found this deed to him for these lots 34, 35 and 36, which deed had not been recorded. On checking the plat of the lands it was discovered that the property on said plat (Exhibit 1 to Hixson, marked in yellow), had not been conveyed to the city, and it was when Mr. Hixson came up there to the witness' office that Mr. Rhea discovered these additional lots which he had not conveyed, and that was the first time Rhea knew it.

The defendant, Mr. Rhea, testified at some length. It might be said that he made a rather feeble denial of the facts testified to by the several witnesses for complainant, to wit, that he had intended to convey his entire holdings in that locality to the city for school purposes. This court was impressed that it was not a forthright and impressive denial but was somewhat evasive. On being further examined he testified that he thought that his deed to the lots in question had been registered

but he discovered that the deed from Barrett to some of these lots had not been put to record, and that he did register it as soon as he found out that it was not. He further contended that the fence as placed by Mr. Hixson in the plat, Exhibit I to Hixson, was in the wrong place. However, the preponderance of the evidence is to the effect that the plat is substantially accurate.

The defendant also denied that Mr. Knight was his authorized agent in the transaction. However, as is pointed out by the Chancellor in his memorandum, a lawsuit in the Circuit Court concerning the commission on this $35,000 sale by the defendant to the city settled that question, the court holding that Mr. Knight was his agent and decreeing him his commission.

The court asked Mr. Rhea whether or not he examined the deed that he gave the city and he answered that he did not read the deed which he signed conveying his place to the city and did not know what it contained by way of description.

We think a preponderance of the evidence establishes that Mr. H. G. Knight was the agent for the defendants, in the sale of this property to the city; that the defendants were bound by the representations and statements of Mr. Knight to the city with respect to the property being sold; that Lots No. 27 to 41 inclusive in Block B of Cumberland View Heights Addition to the Town of McMinnville, which are the lots in question here, were enclosed by a wire fence as a part of the property of the defendants and known as the Frank Winton farm; that the deed executed by the defendants to the complainants did not include all of the property which was intended by the defendants to be sold, and intended by

the complainants to be bought; that the complainants understood and believed, as they had a right to do, that they were buying all of this property including the lots in question; and, that the defendants, Oscar Rhea and wife, thought they were conveying these lots when they executed their deed; and neither party discovered the error until sometime after the sale had been completed.

Under these circumstances what is the duty of the court with respect to the prayer of the bill for a reformation of the deed so as to include the lots that were omitted therefrom by mistake?

The Chancellor points out that the parties were negligent in the drafting and execution of the deed. The City Attorney was not consulted and did not draft the instrument and there appears to have been no title search or an opinion of counsel as to the title to the property. The Chancellor was of opinion that it was not sufficient to merely allege that something was left out but the pleader must explain how the mistake was made and show that he was without fault in the matter, citing Reams v. Board of Mayor and Aldermen of Town of McMinnville, 153 Tenn. 408, 415, 284 S. W. 382. The Chancellor also points out that relief on the ground of mistake can only be granted where the evidence is clear and convincing, and he concludes his opinion thus, ''As stated, supra, equity will not relieve a person from his erroneous acts or omissions resulting from his own negligence. Accordingly the bill is dismissed with costs to complainant.

■■ We think it should be remembered that, according to custom and practice, it was the duty of the sellers to furnish the buyers a deed conveying a good title to all

of the property agreed on. This they did not do. Furthermore, when defendants furnished a description to be incorporated in the deed of conveyance, they impliedly represented that it was correct and embraced the land agreed to be sold. Thus, defendants were also negligent and should not be rewarded in equity for same.

## IV

In Gibson's Suits in Chancery, Fifth Edition (Crownover), at Section 978, it is said that every person who has business dealings with another has the right to expect that he will, in every matter connected with such dealings, do whatever good reason and good conscience require. It is further said that the parties to the contract impliedly contract with each other that in making and performing their engagements, honesty, frankness and fidelity will characterize their conduct. It is said that this implied contract precedes and enters into every express contract and that, when analyzed, it implies thirteen separate elements which are enumerated in the text.

Sub-section (5) states:

"The express contract when finally agreed on, if to be reduced to writing, shall be so worded as to express the real meaning of the contract."

Sub-section (6) states:

"If the contract has been reduced to writing, and by accident or mistake, fails to express correctly the contract really made, at the request of the party injured, the other party will consent to reform the writing so as to make it conform to the contract."

■ In Section 986, the text, in discussing cases arising from mistakes, states:

"A mistake may be defined to be an act which would not have been done, or an omission which would not have occurred, but from ignorance, forgetfulness, inadvertence, mental incompetence, surprise, misplaced confidence, or imposition, and it must be mutual or fraudulent."

"The following mistakes of law and fact will be relieved against."

Here follows a list of twenty-three separate instances for relief in equity. No. 8 in this list is,

"Where land is sold and the deed conveys more or less than the contract called for."

And No. 23 under said Section is,

"Where parties are mistaken as to the effect of a deed."

In the early case of Helm v. Wright, 21 Tenn. 72, our Supreme Court held that equity will, upon oral testimony, rectify a mistake of fact in a written instrument when the words employed do not express the intention of the parties.

In Neal v. Read, 66 Tenn. 333, at page 338, the Court said:

"A court of equity has the jurisdiction to grant relief where an act is done or a contract made, under a mistake or ignorance of a material fact, by the parties doing the act or making the contract. 1 Story Eq., sec. 140-1-2-3.

" 'Money paid under a mistake of fact is recoverable both at law and in equity, unless it be clear that a party making the payment intended to waive all inquiry into the facts. It is not enough that he may have had the means of learning the truth, if he had chosen to make inquiry, the only limitation is that he must not waive all inquiry.' Kerr on Fraud and Mistake, 415; Peck's R., 1, 17, appendix; 2 Yer., 399."

In Barker v. Harlan, 71 Tenn. 505, it was held that a court of equity would not correct the mistake which was that of only one of the parties but that in order to grant the relief it must be shown that the mistake was a mutual one.

In Pittsburg Lumber Co. v. Shell, 136 Tenn. 466, 189 S. W. 879, 880, the Court said:

"To be the subject of correction, a mistake must have been mutual, or there must have been a mistake of one party influenced by the fraud of the other," citing Barker v. Harlan, supra.

It was further stated by the Court in said case that the purpose of the parties at the time a deed was made will determine its effect, for the primary rule of construction of contracts is to carry out the intention of the parties thereto.

The above quoted language from Pittsburg Lumber Co. v. Shell was referred to and quoted with approval in Jones v. Jones, 150 Tenn. 554, at page 596, 266 S. W. 110, and Barker v. Harlan, supra, was cited also.

In Reams v. Board of Mayor and Aldermen of Town of McMinnville, 153 Tenn. 408, 284 S. W. 382, cited

and relied on by the Chancellor in the case at bar, it is to be noted that the Court stated that it agreed with the chancellor in that case that the allegations in the bill on which reformation was sought were mere conclusions of the pleader and did not set forth any facts that would justify the Court in decreeing that the defendants were acting corruptly or fraudulently. And again 153 Tenn. at page 415, 284, S. W. at page 384, it is said:

"In our opinion these allegations are too vague, indefinite, and uncertain. They lack positiveness.

No facts are alleged."

And then it is said:

"Taking the pleading as a whole, we are impressed with the idea that complainants executed the deed believing and expecting that the school building would be erected upon the lot conveyed, but without any express agreement that such a provision was to be inserted in the deed."

And further it is said:

"It would require a most extraordinary case to induce the court to decree a specific performance of a contract of this character."

While the Court in commenting on the insufficiency of the charges in the bill, did state that in order to obtain relief, a pleader must explain how a mistake was made to show that he was without fault in the matter, we do not believe that Reams v. Board of Mayor etc. of McMinnville, is authority for the action taken by the Chancellor in the case at bar, when considered in the light of the almost unanimous and unbroken line of authority in this State to the effect that a mutual mistake, or one

induced by fraud, will be corrected in a court of equity on a proper showing.

In Franklin v. Jones, 28 Tenn. App. 528, 529, 191 S. W. (2d) 835, in an opinion by the late Judge Howell, it was pointed out that a mistake for which equitable relief will be afforded may be defined as an act which would not have been done or an omission which would not have occurred, but from ignorance, forgetfulness, inadvertence, mutual incompetence, surprise, misplaced confidence, or imposition, and it must be mutual or fraudulent, and equity will afford relief against a mistake of law and fact as a result of which a party, mistaken both as to law and fact, erroneously supposed he was acquiring a valid title.

V

We think, as hereinabove stated, that a clear preponderance of the evidence established that the mistake sought to be corrected here was a mutual one, and we think that it would be inequitable and unconscionable to permit the defendant to retain possession of the fifteen lots in question as against the people of McMinnville under the facts and circumstances shown here.

It results that the decree of the Chancellor is reversed and the cause remanded for such additional proceedings in the Chancery Court as may be necessary to put the city in possession of the fifteen lots which were omitted from the original deed.

The costs here are divided equally between the parties. The costs below will abide the decision of the Chancellor.

Reversed and remanded.

Felts and Bejach, JJ., concur.