WILLIAM BUNNS, JAMES COPLEN, WILLIAM JOHNSON, CHARLES W. JONES, ROBERT M. JOHNSON, MRS. D. J. CAMP, MRS. ANN ETHRIDGE, Individually and On Behalf of All the Homeowners of Parkway Village Subdivision, Appellees, v. WALKEM DEVELOPMENT CO., Inc., and WAKE REALTY CO., Inc., Appellants. —385 S.W.(2d) 917.

Western Section. May 28, 1964.

Certiorari Denied by Supreme Court January 4, 1965.

682

George Morrow and Lawson F. Apperson, Martin, Tate & Morrow, Memphis, of counsel, for appellants.

Hanover, Hanover, Hanover & Walsh, Memphis, for appellees.

BEJACH, J. This cause involves an appeal by Walkem Development Company, Inc. and Wake Realty Company, Inc., an affiliated corporation, which holds title to Lot 866, Section E, Parkway Village Subdivision in Shelby County, Tennessee, from a decree of the Chancery Court of Shelby County which adversely affects their interest in and title to said Lot 866. In this opinion, the parties will be styled, as in the lower court, complainants and defendants, or called by their respective names, Walkem Development Company, Inc., being sometimes designated as "Walkem" and Wake Realty Company, Inc., being designated as "Wake".

On July 9, 1962, complainants for themselves and on behalf of all other homeowners in Parkway Village Subdivision, Shelby County, Tennessee, filed a bill against the defendants in which they seek to obtain, by means of a mandatory injunction, specific performance of alleged contractual rights with reference of Lot 866, Section E, Parkway Village Subdivision, on which it is claimed defendants are obligated to operate and maintain a club house and recreation center. Their bill seeks, also, a

prohibitory injunction restraining defendants from disposing of, by sale, lease or otherwise, said Lot 866 of Section E, or the facilities thereon, and for a declaration, under the declaratory judgment law of Tennessee, of the rights and interests of the parties in and to said Lot 866 and the facilities thereon. Said Lot 866 is a 3.1 acre tract of land on which has been erected and heretofore maintained a club house, a swimming pool, tennis courts, and other recreational features. Plats of various sections of Parkway Village Subdivision have been separately recorded in the Shelby County Register's Office, many of them prior to the recording of the plat of Section E. The recorded plat of Section E of said subdivision designates Lot 866 as ''Recreation Center''. Proof in the record establishes that during the latter part of 1960 or early part of 1961, after a large number of lots had already been sold, ''Walkem'' conceived the idea of promoting and enhancing the sale of lots in the subdivision by establishing on Lot 866, for the benefit of lot owners in the subdivision, a club house, swimming pool, and other recreational features. All lot owners in the subdivision were to be entitled to free memberships in the club for themselves and their families, subject only to payment of dues to the club of $6.00 per month. Some provision was made, however, for non lot owners to obtain membership in the club on payment of a membership fee of $10.00 and the monthly dues of $6.00. Advertisements were published announcing this program, and a club house, swimming pool and other recreational features were established by defendant ''Walkem'', at a cost to it of $107,000. Defendant ''Wake'' is merely the holder of title to said lot 866. Upon completion of the club house in July 1960, Lot 866 was leased to the Parkway Village Recreation Club, which operated a club thereon for the benefit of lot owners in

Parkway Village Subdivision until April 1962, at which time it failed, on account of lack of dues paying members, and the lease was cancelled by consent. During this time, all lot owners in Parkway Village Subdivision who desired same were given free memberships in the club, subject only to payment of monthly dues of $6.00. The decrease in membership is reflected by the following tabulation taken from the deposition of Dr. Gordon Bennett, who conducted the operation of Parkway Village Recreation Club:

| | |
|---|---|
| "July, 1961 | 301 members |
| August | 289 members |
| September | 211 members |
| October | 154 members |
| November | 113 members |
| December | 55 members |
| January, 1962 | 28 members |
| February | 38 members |
| March | 45 members |
| April | 41 members" |

After the failure of Parkway Village Recreation Club, and up to the time of the hearing of this cause, defendants continued to operate the club. Efforts were made to lease or sell the club and its facilities to the Y.M.C.A.; but, because of objections and protests from lot owners, these efforts were cancelled and discontinued. At the time complainant's bill was filed, and at the time of the hearing, defendants had no program or plan for disposition of Lot 866 and the facilities thereon. Complainants contend, however, and the Chancellor sustained this contention, that the provision in the lease to Parkway Village Recreation Club, giving it a first refusal to buy the property, and a provision in the proposed lease to the

Y.M.C.A., granting to it an option to purchase, violated the rights of complainants and other lot owners.

The Chancellor sustained complainants' bill and decreed that all home owners in Parkway Village Subdivision had a right of use and enjoyment in and to Lot 866 of said subdivision and the improvements thereon, as a recreation center, subject to certain limitations, the principal one of which was the obligation to pay dues in the amount of $6.00 per month. A prohibitory injunction was issued, which restrained defendants from selling, conveying, transferring or leasing Lot 866 and the improvements thereon, except for the purpose of using same as a recreation club primarily for the benefit of the resident owners of lots in said Parkway Village Subdivision. Defendants also were enjoined from interfering with or infringing on the rights of the owners of lots in the subdivision to enjoy and use their rights in and to Lot 866. Defendants were permitted to continue operation of the club on Lot 866, but were ordered to notify the court at least 30 days before discontinuing such operation, and it was adjudged that no person other than the present home owners of Parkway Village Subdivision have any interest or easement in said Lot 866. The cause was retained in court for the enforcement of the decree and the injunction granted; but the Chancellor expressly declined to declare the rights of the parties in and to Lot 866 in the event that the present recreational club ceases to operate thereon. In his opinion, which is referred to in the decree, the Chancellor calls the promotion idea of the Walkem Development Company a "dedication for recreation purposes of a 3.1 acre tract of land which is designated on the plat of subdivision as Lot 866 of the Parkway Village Subdivision." Defendants excepted to the decree

as entered, prayed, and have perfected their appeal to this court.

In this court, as appellants, defendants have filed seven assignments of error, which may be summarized, as follows:

I. That the trial court erred in finding that defendants had dedicated the recreation premises to the owners of lots in the Parkway Village Subdivision.

II. That the trial court erred in holding that the lot owners of Parkway Village Subdvision had a possessory right to use and enjoy the recreation facilities constructed by the defendants.

III. That the trial court erred in holding that no person other than the present home owners of Parkway Village Subdivision had any interest in the subject property.

IV. That the trial court erred in refusing to declare the ultimate rights and interests of the parties in the subject property.

V. That the court erred in granting an injunction against the defendants.

VI. That the court erred in sustaining the objections to defendants' proof that nothing had been added to the ultimate price of the subdivision lots because of the club membership's offer to lot owners.

VII. That the trial court erred in holding that the lease of the premises to Parkway Village Recreation Club, with first refusal to purchase same, and the subsequent oral lease to the Y.M.C.A., with option to purchase, constituted violations of the rights of complainants.

We will dispose of these assignments in the order named.

We think Assignment of Error No. I must be sustained. This assignment is:

"The trial court erred in finding that the defendants had 'dedicated' the recreation premises to the owners of lots in the Parkway Village Subdivision."

■ ■ There can be no dedication of property to private individuals. Any dedication must be for the benefit of the public at large. From 16 Am.Jur.—Dedication— sec. 15, page 359, we quote as follows:

"There is no such thing as a dedication between the owner and individuals. The public must be a party to every dedication. In fact, the essence of a dedication to public uses is that it shall be for the use of the public at large. There may be a dedication of lands for special uses, but it must be for the benefit of the public, and not for any particular part of it; and if from the nature of the user it must be confined to a few individuals, such as the use of land for piling wood, the idea of dedication is negatived."

To the same effect, see 26 C.J.S. Dedication sec. 9, page 413 and 2 Thompson on Real Property, sec. 483.

In the case of McKinney v. Duncan. 121 Tenn. 265, 118 S.W. 683, the complainant claimed the right to the use of a road across defendant's property on two distinct grounds, one by prescription, arising from continuous user for more than twenty years; and two, dedication by the owners of the property to the public. The Supreme Court in an opinion written by Mr. Justice Shields, later Chief Justice, denied both claims. From this opinion,

dealing with the subject of dedication, we quote as follows:

"We are also of the opinion that the complainant had not made out a case of dedication of the road to the public. Dedication is the appropriation or gift by the owner of land, or an easement therein, for the use of the public. It may be express, where the appropriation is formally declared, or by implication arising by operation of law from the conduct of the owner and the facts and circumstances of the case. To establish it by implication, there must be proof of facts from which it positively and unequivocally appears that the owner intended to permanently part with his property and vest it in the public, and that there can be no other reasonable explanation of his conduct. In other words, dedication is a question of intention, and the intent must be clearly and satisfactorily proven." McKinney v. Duncan, 121 Tenn. 265, 271, 118 S.W. 683, 684.

██ ██ On the plat of Section E, Parkway Village Subdivision, Lot 866 is designated "Recreation Center". At the time this plat of Section E was placed of record, approximately half of the lots in all completed and proposed sections of Parkway Village Subdivision had been purchased, and the record shows that only one of the complainants purchased his lot after the plat of Section E was put of record. This one complainant had made no attempt to join the club until April 16, 1962, just one week before the Parkway Village Recreation Club was forced to discontinue operation and cancel its lease on April 23, 1962. The recorded plat of Section E, Parkway Village Subdivision provides, "All lots in the tract shall be known as residential lots, unless otherwise shown, except lots 900 through 908 which may be used for residential

lots or recreation center." Defendants contend that the designation of lot 866 as "Recreation Center" was to prevent it, and possibly lots 900 through 908 from being restricted to residential use only, and that such reservation was made for the benefit of defendants, just as designation of certain other lots as Church and Commercial Lots in other sections of Parkway Village Subdivision had been made. We think this contention is sound, and that it is justified by the record before us. Assignment of Error No. I is, accordingly, sustained.

Assignment of Error No. II is "The trial court erred in holding that the lot owners of Parkway Village Subdivision had a possessory right to use and enjoy the recreation facilities constructed by the defendants."

■ The representations relied on by complainants were set out in Exhibits 8, 9, and 11 to the original bill. Exhibit 8 is a hand-bill reprint of a news story about the proposed club which appeared in the Memphis Commerical Appeal of May 8, 1960, with a letter on the back signed by Parkway Village Recreation Club, Inc. inviting both Parkway Village residents and outsiders to join the club. Exhibit 9 is a handbill advertising "Free Club Membership in Parkway Village Recreation Club". Exhibit 11 consists of three photographs of sign boards that advertise "Parkway Village Recreation Club" and announce "Free Family Memberships Available only to Parkway Village Homeowners". The club facilities were furnished by defendant through its lease to Parkway Village Recreation Club, and free memberships in the club, subject only to payment of dues in the amount of $6.00 per month were offered to all lot owners of Parkway Village Subdivision. Defendants lived up to their obligation in this manner, but neither defendants nor the Parkway Village Recreation Club could insure the successful

continuation of a club if the lot owners in Parkway Village Subdivision failed or refused to support the club financially by maintaining a sufficient number of lot owners as members to keep the club in operation. In our opinion, complainants do not, for themselves individually or on behalf of other lot owners in Parkway Village Subdivision, have authority to compel, by process or orders of the Chancery Court, operation of a club which they or those for whom they sue, are unwilling to support financially. Whatever rights complainants and other lot owners in Parkway Village Subdivision may have against defendants must be classified as contractual rights, as third party beneficiaries of contractual obligations assumed by defendants. Assignment of Error No. II is accordingly sustained.

■ Assignment of Error No. III is, ''The trial court erred in holding that no person other than present homeowners of Parkway Village Subdivision have any interest in the subject property.'' This holding is erroneous because it is apparent that, from the very first, outsiders were permitted to become members of the club which was organized in an effort to comply with the offers made by defendants. Such holding by the lower court amounts also to an unlawful and improper restriction imposed against defendants in the use of and right to alienate their property. Assignment of Error No. III is sustained.

■ ■ Assignment of Error No. IV is, ''The trial court erred in refusing to declare the ultimate rights and interests of the parties in the subject property.'' This refusal by the trial court was erroneous, because complainants' bill was filed under the provisions of the Tennessee Declaratory Judgments Law, Sections 23-1101 to 23-1113, inclusive, T.C.A., and a declaration of rights was

one of the primary objectives of complainants' bill. In our opinion, complainants are entitled to a declaration that they and other lot owners of Parkway Village Subdivision for whose benefit they sue, are entitled to membership, subject to payment of dues, in any club operated by defendants, or by a transferee or lessee of said lot 866, as long as such club continues in operation; but they are not entitled to a guaranty that the dues of such club shall continue to remain as low as $6.00 per month. It has been demonstrated that dues in that amount, with the reduced membership which occurred, are insufficient for continued operation of the club. Defendants will not, however, be prohibited from sale or lease of Lot 866 for purposes other than a recreation club, if continued operation of such club becomes impracticable. Assignment of Error No. IV is sustained.

Assignment of Error No. V is, "The court erred in granting an injunction against defendants." The injunction awarded to complainants in the lower court had the effect of granting to them, in part at least, specific performance, which is prayed for in their bill.

The operation of a recreation center, and especially so when a club such as that involved in the instant case is included, requires constant expert care and supervision by highly qualified personnel, and the operators of such recreational center must constantly exercise judgment in making decisions about the operation involved. Specific performance, either in whole or in part, would, therefore, require personal services of considerable magnitude and much detail. The general rule is that specific performance may not be granted in cases of that character. Starnes v. Newsom, 1 Tenn.Chancy. 239; McCann v. South Nashville Street R. Co., 2 Tenn.Chancy. 773; Tennessee Electric

Power Co. v. White County, 6 Cir., 52 F.(2d) 1065; Pearl v. City of Nashville, 19 Tenn. 597; Reams v. Town of McMinnville, 153 Tenn. 408, 284 S.W. 382. On this subject, from 49 Am. Jur.—Specific Performance—Sec. 134, pp. 156, 157, we quote as follows:

"The general rule in respect of contracts for personal services is that for breach thereof a party must avail himself of the remedy afforded at law. It is a familiar and well established doctrine that courts of equity will not exercise jurisdiction to grant a decree for specific performance of a contract for personal services except perhaps in very exceptional cases or under very exceptional circumstances. Neither, as a general rule, will equity indirectly enforce a contract for personal services by an injunction restraining the employee from leaving the services of the employer, except to prevent breach of contract by one who possesses some special, unique, or extraordinary qualifications, where it would be difficult, if not impossible, to replace his services, and damages obviously would be inadequate to remedy the loss. Thus, courts of equity will decline jurisdiction to decree specific performance of contracts for personal services involving the exercise of special skill, judgment, and discretion, especially where the contracts are continuous in their nature and run through a number of years or an indefinite period of time."

Our Supreme Court applied the principle of leaving the party aggrieved to its remedy at law in the case of Union Planters Bank & Trust Co. v. Memphis Hotel Co., 124 Tenn. 649, 139 S.W. 715, 39 L.R.A.,N.S., 580, where the lower court had issued a prohibitory injunction which the Supreme Court held amounted, in

effect, to a mandatory injunction. We think complainants in the instant case should be limited to such remedy, if any remedy exists, in the event that discontinuance of the operation of a club on Lot 866 becomes necessary.

Independent of dedication, which must be for the benefit of the general public, lot owners may acquire an easement or property right in streets or parks by reason of reference thereto in their deeds, or by reason of a conveyance according to a plat which shows the existence of such facilities. It was expressly so held by the Supreme Court in Goetz v. Knoxville Power & Light Co., 154 Tenn. 545, 290 S.W. 409, and, quite recently, by this Court in Hudson v. Collier, 48 Tenn.App. 386, 348 S.W.(2d) 350, and in Baker v. Butler, 51 Tenn.App. 111, 364 S.W.(2d) 916, 922. Other cases to the same effect are: McKinney v. Davidson County, 194 Tenn. 689, 254 S.W. 975; Ridley v. Haiman, 164 Tenn. 239, 47 S.W.(2d) 750; State ex rel. Kincaid v. Hamilton, 109 Tenn. 276, 70 S.W. 619; Wilson v. Acree, 97 Tenn. 378, 37 S.W. 90; Henderson v. Donovan, 81 Tenn. 289; Byington v. Bass, 11 Tenn.App. 569; and McCord v. Hays, 202 Tenn. 46, 302 S.W.(2d) 331. So far as we have been able to ascertain, however, this principle has been applied only with reference to streets, parks, squares or other areas requiring no future care or continuing supervision by the grantors. This principle would not, in any event, be applicable in the instant case, because none of the lots in Parkway Village Subdivision were sold by defendants, or either of them, to their present owners. All lots in this subdivision were sold by "Walkem" to professional builders, who sold them to complainants and other lot owners in the subdivision. So far as the record shows, no deed to any of complainants or to other lot owners makes any reference to Lot 866 of Section E, Parkway Village Subdivision, or

to the recreation center to be installed thereon. Indeed, only one of complainants purchased his lot after the plat of Section E was recorded, and he did not join the Parkway Village Recreation Club until about a week before it ceased operations. Assignment of Error No. V will be sustained, and the injunction granted in the lower court will be dissolved.

Assignment of Error No. VI is, "The court erred in sustaining objections to defendants' proof that nothing had been added to the ultimate price of the subdivision lots because of the club memberships offered to lot owners." This assignment of error we consider immaterial, because, although the evidence offered was probably competent and admissible, its exclusion did not adversely affect the decision of the litigation. Under the provisions of our harmless error statute, sec. 27-117, T.C.A., no reversal could be granted on the ground that such evidence was improperly excluded.

Assignment of Error No. VII is, "The trial court erred in holding that the lease of the premises to Parkway Village Recreational Club, with first refusal to purchase same, and the subsequent oral lease to the Y.M.C.A., with option to purchase, constituted violations of the rights of complainants." This assignment of error must be sustained for two reasons: First, since both of said contracts had been cancelled prior to the filing of the bill in this cause, neither of them could present any justiciable issue in this litigation; and, second, because, as pointed out above in the disposition of assignment of error No. I, the designation of Lot 866 in Section E of Parkway Village Subdivision as "Recreation Center", was a reservation made for the benefit of defendants themselves, for the purpose of preventing the use of said

lot being restricted to residential purposes. In our opinion, the right of defendants to lease, sell, or otherwise convey said Lot 866 was not impaired by such designation of Lot 866, nor by any obligations assumed by defendants with reference to complainants or other lot owners in Parkway Village Subdivision. As is stated above, if, as, or when it becomes necessary for the operation of a club on Lot 866 to be discontinued, complainants and other lot owners in Parkway Village Subdivision should be left to the remedy, if any, of a suit at law. Assignment of Error No. VIII is sustained.

For the reasons hereinabove stated, the decree of the Chancery Court of Shelby County, Tennessee, will be reversed. A decree will be entered in this Court in conformity with this opinion. The costs of the cause, including those of the lower court, as well as those of this Court, will be adjudged against the complainants and their surety on the cost bond filed in the lower court.

Avery, P. J. (W.S.), and Carney, J., concur.